974 So.2d 150 (2008)
STATE of Louisiana, Appellee,
v.
Thomas HEDGSPETH, Appellant.
No. 42,921-KA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
*152 Peggy J. Sullivan, Monroe, for Appellant.
Paul J. Carmouche, District Attorney, John F. McWilliams, Lea R. Hall, Jr., Brady D. O'Callaghan, Assistant District Attorneys, for Appellee.
Before GASKINS, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana, where the defendant, Thomas Hedgspeth, was convicted of aggravated rape and aggravated burglary, violationS of La. R.S. 14:42(A) and La. R.S. 14:60, respectively. On the aggravated rape charge, he was sentenced to the mandated life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; on the aggravated burglary charge, he was sentenced to 30 years' imprisonment at hard labor to run consecutively with the life sentence. Hedgspeth now appeals. For the following reasons, we affirm.

*153 FACTS
On October 16, 2003, the 17-year-old defendant, Thomas Hedgspeth, and his friend, Christopher Jackson, broke into a house, located in Caddo Parish, intending to steal the homeowner's car. The house was owned by 79-year-old victim, M.J.,[1] who resided on the same street as Hedgspeth. M.J. testified that she was alone in the house preparing to take a shower when she heard a noise. Thinking it was her son, she peeked around the hallway door to see if he needed her. She testified that instead she saw two black men wearing hooded sweatshirts standing near the front door, one taller than the other. She attempted to run to the bedroom to call for help. Before she could get the bedroom, door locked, Hedgspeth, described as the taller of the two, went into the room. A struggle ensued, during which M.J. was hit and choked. Hedgspeth insisted that she turn, over her car keys, which she did. At that point, Hedgspeth forced M.J. to perform oral sex on him. When M.J. could not perform this act, he again struck her and pushed her onto the bed, where he proceeded to have vaginal intercourse with M.J. against her will.
The two men left the house in M.J.'s car, and M.J. called the police. A Shreveport police K-9 officer spotted a group of people standing around a car matching the description of M.J.'s vehicle, but as the officer drove up to the vehicle, Hedgspeth and Jackson fled on foot. During the subsequent investigation and interviews with witnesses who were near the car, Hedgspeth and Jackson were named as suspects and were eventually apprehended. M.J. was taken to the hospital for a rape examination.
During an interrogation, Hedgspeth admitted breaking into M.J.'s house and further admitted that he raped M.J.: "I poked her. What else do you want to know?" At trial, however, we note that Hedgspeth admitted he told police he had sex with M.J. but said his statement to the police was a lie. Hedgspeth and Jackson consented to have their cheeks swabbed for an epithelial cell submission. The DNA tests later revealed that the DNA profile obtained from the samples taken from the rape kit was consistent with the defendant's DNA profile. According to Kelli Langley, an expert in DNA identification and analysis, the probability of finding the same DNA profile from a randomly-selected individual other than the defendant was approximately 1 in 46.8 trillion.[2] The DNA test ruled out Jackson as the rapist. Jackson confirmed at trial that Hedgspeth was the person who raped M.J.
On April 27, 2006, the jury unanimously returned a verdict of "guilty as charged" against Hedgspeth as to both counts of aggravated rape and aggravated burglary. On May 19, 2006, the trial court sentenced the defendant on the aggravated rape count to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence, and on the aggravated burglary count to 30 years' imprisonment at hard labor to be served consecutively to the life sentence. This appeal ensued.

LAW AND DISCUSSION

Motion for Continuance
In his first assignment of error, Hedgspeth argues that the trial court erred by granting the state a continuance *154 of the trial after the trial commenced. He contends that the sole purpose of the continuance was to give the state additional time to prepare for trial and that his due process rights were violated because he was entitled to a trial before the jurors who had been already accepted and agreed upon.
Initially, the trial began on January 9, 2006, during which 10 of the 12 jurors were selected and sworn. The next morning, on January 10, 2006, the state orally moved for a "continuance." The state explained that it had been under the impression that the results of the DNA testing were inconclusive, but the state since discovered that the DNA testing was never actually performed by the crime lab. The defense admitted that they had been under the same impression as the state, but objected to the request for a continuance on the grounds that 10 jurors had already been selected. The trial judge at these first proceedings stated:
[I]f this evidence is analyzed at the crime lab, it could basically exonerate Mr. Hedgspeth. That's how important it is. On the other hand, if it's analyzed it could provide very clear and compelling evidence of his guilt. Either way, I think it's potentially critical evidence to the case. I believe that the state's motion has merit and is therefore granted. We'll have to reset this matter, and there will need to be clear instructions to the crime lab to get busy.
The trial was rescheduled to April 24, 2006, at which time it was before a different trial judge and an entirely new panel of jurors was called, questioned, and selected.
Louisiana C. Cr. P. art. 708 provides:
A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced. (Emphasis added.)
Here, in order to determine whether the grant of the motion for continuance was proper, we must first determine if the initial trial had "commenced." Louisiana C. Cr. P. art. 761 provides that, "a jury trial commences when the first prospective juror is called for examination." Since it is undisputed that 10 of the 12 prospective jurors had been selected, pursuant to articles 761 and 708 the trial had already commenced. Thus, the trial court was without authority to grant a "continuance," and in effect the action was an illegal dismissal.[3] However, Hedgspeth must show he has been prejudiced by this action, as the dismissal alone does not constitute reversible error. State v. Love, XXXX-XXXX (La.05/23/03), 847 So.2d 1198.
On appeal, Hedgspeth complains that as a result of this "continuance" the state was given additional time to prepare for trial and that he was entitled to have his case tried before the jurors already selected. The right to have one's trial completed by a particular tribunal is within the protection of the constitutional guarantee *155 against double jeopardy, since it is that "right" that lies at the foundation of the rule that jeopardy attaches when the whole jury is empaneled and sworn. Grist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). However, in the instant case, that "right" had not yet attached when the trial court granted the state's motion and dismissed the partial jury. Louisiana C. Cr. P. art. 790 provides:
When selection of jurors and alternate jurors has been completed, and all issues properly raised under Article 795 [time for challenges; method; racially based peremptory challenges; restrictions] have been resolved, the jurors shall then be sworn together to try the case in a just and impartial manner, each to the best of his judgment, and to render a verdict according to the law and the evidence. (Emphasis added.)
For purposes of determining when double jeopardy attaches, the swearing of the jury "together to try the case" is distinguished from the individual swearing of jurors, also known as tendering, provided for in La. C. Cr. P. art. 788. See State v. Sermon, 404 So.2d 261 (La.1981). It is clear that double jeopardy did not attach when the trial court dismissed the partial jury. Indeed, Hedgspeth never alleges that he was placed in double jeopardy during the subsequent recommenced proceedings.
Moreover, the public has an interest in affording the state one full and fair opportunity to present its evidence to an impartial jury. See Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). The right to have one's case tried before the jurors already selected cannot serve as a barrier to full and fair prosecution of the defendant under these particular circumstances. See State v. Marshall, 410 So.2d 1116 (La.1982). In the case at hand, since the jury was not sworn pursuant to La. C. Cr. P. art. 790, nothing prevents the state from pursuing a full and fair prosecution.
Further, we find that the record does not support, nor are we persuaded, that the additional preparation time afforded the state warrants reversal. Had the state moved for and been granted a continuance only a day earlier (prior to the examination of the first prospective juror), or had the trial been originally scheduled for a later date, such actions would not have been an abuse of discretion. The trial judge found that the DNA results were critical to the case because they could essentially exonerate the defendant or provide strong evidence of his guilt. The state explained that the crime lab was backlogged and that the earliest available trial date for the recommenced proceedings would be April 24, 2006, to which defense counsel responded: "That date's agreeable, Your Honor."
In fact, under these circumstances, if the trial court denied the continuance motion, the state could have immediately nolle prosequied the charges and reinstituted the prosecution under a separate docket number (which, practically speaking, would have been tried at a later date). In State v. Albert, 430 So.2d 1279 (La.App. 1st Cir.1983) writ denied, 433 So.2d 711 (La.1983), the prosecutor entered a nolle prosequi at a first trial after 6 of 12 jurors had been selected. In Albert, the subsequent conviction and sentence were affirmed. In State v. Payton, XXXX-XXXX (La.App. 4th Cir.02/28/07), 954 So.2d 193, the trial court held that the state's failure to timely seek a continuance did not bar reinstitution of the same charges after the prosecutor entered a nolle prosequi immediately upon the denial of its motion for a continuance on the day trial was originally set to begin.
*156 Hedgspeth has failed to show how the trial court's dismissal of the partial jury on January 10, 2006, deprived him of the opportunity for a fair trial or otherwise necessitates reversal of his convictions and sentences. This assignment is therefore without merit.

Imposition of Consecutive Sentences
Next, Hedgspeth argues that the trial court erred in imposing consecutive sentences for offenses arising from a single course of conduct without articulating factors sufficient for such consecutive sentences. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883.
Concurrent sentences arising out of a single cause of conduct are not mandatory, and it is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Coleman, 32,906 (La.App. 2d Cir.04/05/00), 756 So.2d 1218, writ denied, XXXX-XXXX (La.03/23/01), 787 So.2d 1010.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Mitchell, 37,916 (La. App.2d Cir.03/03/04), 869 So.2d 276, writ denied, XXXX-XXXX (La.09/24/04), 882 So.2d 1168, cert. denied, 543 U.S. 1068, 125 S.Ct. 905, 160 L.Ed.2d 801 (2005).
Among the factors to be considered are the defendant's criminal history; the gravity or dangerousness of the offense; the viciousness of the crimes; the harm done to the victims; whether the defendant constitutes an unusual risk of danger to the public; the potential for defendant's rehabilitation and whether defendant has received a benefit from a plea bargain. State v. Adams, 493 So.2d 835 (La.App. 2d Cir.1986), writ denied, 496 So.2d 355 (La.1986).
Here, in explaining the sentences imposed, the trial judge expressly noted the circumstances and particularly the heinous nature of the crimes committed by defendant on a then 79-year-old woman. The harm done to the victim was obvious. The trial judge stated that "[t]his was one of the worst cases that this Judge has heard." As the trial judge aptly noted, the defendant committed at least two distinct sex acts against the victim's will. The trial court found that defendant is a "very dangerous person who needs to be removed from the public." After a thorough review, the record is more than adequate to support consecutive sentences in this case.

Excessive Sentence
Finally, Hedgspeth argues that the imposition of the mandatory life sentence for aggravated rape was constitutionally excessive in this case, especially given his youth and his borderline intellectual functioning. Appellate review of sentences for excessiveness is two-pronged. First, the record must show that the trial court complied with La. C. Cr. P. art. 894.1. The trial court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Woods, 41,420 (La.App.2d Cir.11/01/06), 942 So.2d 658, writs denied, 2006-2768, 2006-2781 (La.06/22/07), 959 So.2d 494. Where there is a mandatory sentence, there is no need for the trial court to justify, under Article 894.1, a sentence it is legally required to impose. State v. Burd, 40,480 (La.App.2d Cir.01/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/09/06), 941 So.2d 35.
*157 The second prong is constitutional excessiveness. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Smith, 2001-2574 (La.01/4/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, XXXX-XXXX (La.05/16/00), 769 So.2d 1158. As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Brisco, 33,179 (La.App.2d Cir.04/05/00), 756 So.2d 644, writ denied, XXXX-XXXX (La.05/25/01), 792 So.2d 749. The record clearly reflects that as a result of the victim's age and the use of force and threats of great and immediate bodily harm to overcome the victim's resistance, Hedgspeth committed aggravated rape. The offenses committed by Hedgspeth were of a shocking and heinous nature. Hedgspeth was the principal aggressor in the offenses. He initially accosted the elderly victim, choked and hit her, and then repeatedly raped her. The circumstances here do not militate against the legislature's determination that 17-year-old aggravated rapists are to be treated as adults without varying the punishment according to the age of the accused. State v. Foley, 456 So.2d 979 (La. 1984). Similarly, a diminished mental capacity does not automatically render the mandatory life sentence for aggravated rape unconstitutionally excessive.[4]See State v. Wilson, 28,403 (La.App.2d Cir.08/21/96), 679 So.2d 963.
Here, not only was the life sentence for aggravated rape a mandatory sentence, the trial court provided extensive reasons for both sentences, specifically noting the defendant's youthful age; however, this was negated by the gravity and the viciousness of the offenses. Also weighing heavily in favor of the sentences was Hedgspeth's lack of remorse during the proceedings and his continued efforts at trial to evade responsibility for the rape despite overwhelming evidence to the contrary.
There is nothing in this record to suggest that the punishment is constitutionally excessive. As the Louisiana Supreme Court has stated, "aggravated rape deserves a harsh penalty; it is one of the most violent felonies a person can commit." State v. Foley, 456 So.2d at 983.
This assignment is without merit.

CONCLUSION
For the foregoing reasons, Thomas Hedgspeth's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The victim's initials are used because of victim confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W).
[2] To put this statistic into context, the current world population is only 6.6 billion.
[3] It is well settled that whether the motion was improperly styled as one of continuance, recess or mistrial (essentially a motion to dismiss the jury), the court may examine the motion as though it had been properly denominated. State v. Spears, 39,302 (La. App.2d Cir.09/27/06), 940 So.2d 135, writ denied, 2006-2704 (La.08/31/07), 962 So.2d 424. However, given the set of circumstances presented here, there is nothing procedurally that allows a jury to be "dismissed" as a result of lack of trial preparation, and not want of a legal defect in the proceedings. State v. Payton, XXXX-XXXX (La.App. 4th Cir.02/28/07), 954 So.2d 193.
[4] Interestingly, the trial court was skeptical whether Hedgspeth truly had a diminished mental capacity in light of his diction during his testimony.