# Illinois Official Reports

## Appellate Court

***People v. Palen*, 2016 IL App (4th) 140228**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SCOTT PALEN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0228 |
| Filed | September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 12-CF-745; the Hon. Leslie J. Graves, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Ryan R. Wilson (argued), all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>John Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and John M. Zimmerman (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion.<br>Justice Holder White concurred in the judgment and opinion.<br>Justice Steigmann dissented, with opinion. |

**OPINION**

¶ 1    Following a September 2012 incident at a Springfield apartment building, the State charged defendant, Scott Palen, with attempt (residential burglary) (720 ILCS 5/8-4(a), 19-3(a) (West 2010)) and possession of burglary tools (720 ILCS 5/19-2(a) (West 2010)). Defendant's first trial began on September 30, 2013. Two assistant State's Attorneys, Karen Tharp and Steven McClure, represented the State. Prior to the trial's evening recess, the trial court swore eight jurors. Before trial resumed the next day, Tharp's father died. Prior to the resumption of jury selection, the court noted the somber circumstances, Tharp's resultant absence, and McClure's comparative inexperience, and then *sua sponte* declared a mistrial.

¶ 2    In November 2013, the trial court began jury selection for defendant's second trial. Defendant never filed a motion to dismiss pursuant to section 114-1(a)(2) of the Code of Criminal Procedure of 1963 (Procedural Code) (725 ILCS 5/114-1(a)(2) (West 2012)) based on double jeopardy principles. The second jury convicted defendant of attempt (residential burglary) and possession of burglary tools. Defendant filed a posttrial motion raising the double jeopardy issue by arguing the court erred in declaring a mistrial in the first case. Thereafter the trial court denied defendant's posttrial motion and sentenced defendant to concurrent sentences of 10 and 6 years in prison.

¶ 3    Defendant appeals, arguing (1) the trial court abused its discretion by declaring a mistrial unmerited by a manifest necessity, and, as a result, double jeopardy barred his retrial; (2) his prior burglary conviction was improperly admitted; (3) the court erred in sentencing where (a) it made improper findings, (b) it failed to adequately consider the evidence presented in mitigation, and (c) his six-year sentence for possession of burglary tools violates the prohibition against imposing an extended-term sentence on a lesser class felony offense; and (4) the matter should be remanded to allow the court to conduct an ineffective-assistance-of-counsel inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). We affirm in part, vacate in part, and remand with directions.

¶ 4                                     I. BACKGROUND

¶ 5    On September 20, 2012, the State charged defendant by information with attempt (residential burglary) (720 ILCS 5/8-4(a), 19-3(a) (West 2010)) and possession of burglary tools (720 ILCS 5/19-2(a) (West 2010)), based on an incident on September 5, 2012.

¶ 6    On June 26, 2013, the State filed a motion seeking to introduce defendant's prior conviction for residential burglary of an apartment. The State argued defendant's 2009 conviction would establish his intent, motive, knowledge, *modus operandi*, and absence of mistake for the charged conduct in this case.

¶ 7    On July 8, 2013, the State filed a notice of intent to impeach defendant with prior convictions for residential burglary and felony disorderly conduct.

¶ 8    During the September 13, 2013, hearing on the State's motions, the State argued the facts underlying the prior residential burglary conviction were substantially similar to those of the instant case, and therefore, the prior conviction was highly probative. In the prior case, defendant broke a window and entered the apartment while the occupant was home. The State maintained the prior conviction showed defendant had, in the past, "the intent to break in despite someone being home." Defendant argued there are only so many ways a residential

burglary can occur. Defendant pointed out individuals committing residential burglary often attempt to gain entry through windows at night.

¶ 9 At the conclusion of the hearing, the trial court granted the State's request to admit defendant's prior conviction. The court noted it would provide the jury with an instruction limiting consideration of the prior conviction to the issue of intent and knowledge. The court also found the State could use defendant's prior disorderly conduct convictions for impeachment if defendant chose to testify but barred the State from using the prior residential burglary conviction for impeachment purposes.

¶ 10 On September 30, 2013, defendant's first trial began. Prior to *voir dire*, the trial court described how jury selection would proceed, stating, "we'll continue the process until we have 12 jurors plus [2] alternates." During *voir dire*, defendant and assistant State's Attorneys Karen Tharp and Steven McClure agreed on eight jurors, who were sworn by the trial court before the proceedings recessed for the evening. Before the trial resumed the next day, Tharp's father died. Prior to the resumption of jury selection, the court noted Tharp's resultant absence and, addressing the somber circumstances, stated, "While I appreciate Mr. McClure being here, I'm not sure this would be the best way for him to do his first felony trial by himself. So due to very unfortunate circumstances, I'm going to call a mistrial in this matter."

¶ 11 After speculating that Tharp would likely return to work within several days, the trial court continued, "I'm going to give [defendant] a court date. I apologize for the [in]convenience. This is obviously something that we have no control over."

¶ 12 We note the trial court declared a mistrial without eliciting the position or advice of defense counsel or assistant State's Attorney McClure. After the court declared a mistrial, defendant acknowledged the court's action and replied, "Yes, ma'am."

¶ 13 Defendant's second trial began on November 13, 2013. During trial, Melissa Morgan testified she heard banging on the side of her apartment near her bedroom window on September 5, 2012, shortly after 10 p.m. Morgan assumed it was just neighborhood kids making noise outside, which she characterized as a common occurrence. A short time later, Morgan's telephone rang. At about the same time, someone started flashing a light in her bedroom window. Morgan testified she did not immediately answer the phone because she was in bed with her one-year-old daughter and was scared. When Morgan returned the call, a member of the police department explained an officer was outside her apartment. Morgan met with the officer, who explained someone had tried to force open her bedroom window. Morgan observed, from the outside, the window appeared "pried open." When Morgan returned inside the apartment, she noticed the window lock was broken. Morgan testified she always checks all the windows to make sure they are locked prior to going to bed. The lock was not broken when she went to bed that night.

¶ 14 Ryan Alexander and Corey Roberts each testified they were at Morgan's apartment complex at approximately 10 p.m. on September 5, 2012. Alexander testified he observed a truck parked on the side of the one of the apartment buildings. A man, whom Alexander and Roberts both identified as defendant, got out of the truck. Defendant was wearing a "hoodie" and shorts. Alexander testified defendant walked around the apartment buildings. Alexander and Roberts followed him. Alexander observed defendant stop near Morgan's apartment and stand on an air conditioning unit. Roberts climbed onto the roof of an adjacent shed to watch defendant. Both Alexander and Roberts observed defendant remove a flat bar from inside his "hoodie" and attempt to force open the window with it. Alexander and Roberts both heard a

"loud pop" sound. After defendant saw Alexander looking at him, defendant walked away from the apartments down a nearby road. Alexander followed defendant. While he lost sight of defendant for a moment, Alexander observed defendant walking back to the apartments. Defendant returned to his truck and drove it "recklessly," cutting through the grass and out of the apartment complex without turning on the truck's headlights. By that point, Roberts had already called the police and provided them with a description of the truck and its license plate number. Alexander testified he chased the truck on foot until he saw two police cars stop the truck. Both Alexander and Roberts identified defendant to police as the man they earlier observed in the apartment complex.

¶ 15    Springfield police officer Jennifer Wallace testified, although she was unable to find any latent fingerprints around Morgan's bedroom window, she observed a shoe print on the air conditioner which had a similar pattern to the soles of the shoes worn by defendant.

¶ 16    Springfield police officer Todd Schwehr testified he was responding to a suspicious persons call at Morgan's apartment complex. When he arrived at the complex, he observed a truck leaving the parking lot at a high rate of speed. Schwehr identified defendant as the driver of that truck. Schwehr testified defendant, who was wearing shorts but no shirt, was "sweating profusely" and "breathing heavily." Police recovered a pair of gloves and a flat pry bar from inside the cab of the truck.

¶ 17    The trial court then read the jury an instruction explaining the State was going to introduce evidence regarding other prior bad acts defendant committed. That instruction limited the jury's consideration of the other acts to defendant's intent and knowledge.

¶ 18    The State then called Springfield police officer Mark Terecki to testify. According to Terecki's testimony, on April 26, 2009, at approximately 2:20 a.m., he was investigating a report someone kicked in a window and entered an apartment. Terecki shined his flashlight into the apartment and saw defendant running toward the exit. A woman was sleeping in an adjacent room. Defendant was arrested and found with $40, which had been taken from inside the apartment. Defendant confessed and pleaded guilty to residential burglary.

¶ 19    Prior to its deliberations, the trial court instructed the jury on attempt (residential burglary), attempt (criminal trespass to a residence), and possession of burglary tools.

¶ 20    Thereafter, the second jury convicted defendant of attempt (residential burglary) and possession of burglary tools.

¶ 21    On December 11, 2013, defendant's trial counsel filed a posttrial motion arguing, inter alia, double jeopardy barred his retrial and the trial court erred in allowing the other-crimes evidence.

¶ 22    On February 4, 2014, the trial court denied defendant's posttrial motion and sentenced him to concurrent terms of 10 and 6 years in prison, respectively.

¶ 23    On March 3, 2014, defendant filed a motion to reconsider his sentence, arguing his 10-year sentence was "too high" and "did not properly take into account all of the factors in mitigation."

¶ 24    On March 18, 2014, the trial court denied defendant's motion to reconsider his sentence. The court stated it carefully considered the factors in mitigation and aggravation, as well as defendant's family circumstances and his history. The court believed the sentence "was quite fair." At the conclusion of the hearing, defendant's counsel asked the court to direct the clerk to file a notice of appeal on defendant's behalf.

¶ 25     On March 20, 2014, the circuit clerk's office received a *pro se* correspondence from defendant, which was addressed to the "Appeals Clerk." Along with a notice of appeal, defendant included a letter addressed "To whom it may concern." According to that letter, defendant wanted to "inform the Appellate Court and anyone else it may concern" of errors he believed were made during his trial. Specifically, defendant alleged, *inter alia*, he received ineffective assistance from his trial counsel. Defendant did not raise any of those allegations at the hearing two days earlier despite his presence at that hearing.

¶ 26     This appeal followed.

¶ 27                                    II. ANALYSIS

¶ 28     On appeal, defendant argues (1) the trial court abused its discretion by declaring a mistrial absent a manifest necessity and, accordingly, the double jeopardy clause barred his retrial; (2) his prior burglary conviction was improperly admitted; (3) the court erred in sentencing where (a) it made improper findings, (b) it failed to adequately consider the evidence presented in mitigation, and (c) his six-year sentence for possession of burglary tools violates the prohibition against imposing an extended-term sentence on a lesser class felony offense; and (4) the matter should be remanded to allow the court to conduct a *Krankel* inquiry.

¶ 29                              A. Double Jeopardy Claim

¶ 30     Defendant's primary argument is the trial court abused its discretion by declaring a mistrial absent a manifest necessity and, accordingly, the double jeopardy clause barred his retrial. Originally, neither party raised the issue of whether double jeopardy applied when only eight jurors had been sworn. Instead, their briefs assumed jeopardy had attached and simply argued whether a manifest necessity existed to allow a second trial. This court, on its own motion, ordered the parties to file supplemental briefs to address whether the swearing of a partial jury was sufficient to invoke double jeopardy principles. We also directed the parties to address whether defendant forfeited his double jeopardy argument by failing to file a motion to dismiss pursuant to section 114-1(a)(2) of the Procedural Code (725 ILCS 5/114-1(a)(2) (West 2012)) and section 3-4(a)(3) of the Criminal Code of 1961 (720 ILCS 5/3-4(a)(3) (West 2010)). Thereafter, we set this case for oral argument.

¶ 31                                   1. *Forfeiture*

¶ 32     Before turning to the merits of defendant's double jeopardy claim, we address the State's contention defendant forfeited his argument because it was not raised until his posttrial motion. While defendant concedes he did not file a motion to dismiss the charges on double jeopardy grounds prior to trial, he maintains the issue is still reviewable under the plain-error doctrine. We agree.

¶ 33     Upon a written motion made prior to trial, a trial court may dismiss charges barred by double jeopardy. See 720 ILCS 5/3-4(a)(3) (West 2010) ("A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if that former prosecution *** was terminated improperly after the jury was impaneled and sworn ***."). "Our supreme court has held that '[t]he constitutional right to not be twice put in jeopardy for the same offense is a personal privilege which may be [forfeited]' where the accused 'does not raise the defense of former jeopardy before judgment in the trial court.' "

*People v. Brown*, 2015 IL App (1st) 134049, ¶ 26, 36 N.E.3d 306 (quoting *People v. Scales*, 18 Ill. 2d 283, 285, 164 N.E.2d 76, 77 (1960) (failure to raise the defense of double jeopardy before judgment in the trial court forfeits the defense)). However, the supreme court has also held a procedurally defaulted double jeopardy claim may still be reviewed on appeal under the plain-error doctrine. *Id.* ¶ 27 (citing *People v. Mink*, 141 Ill. 2d 163, 172-73, 565 N.E.2d 975, 979 (1990)).

¶ 34    The plain-error doctrine provides a narrow exception to the general rule of forfeiture. *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009). It allows a reviewing court to reach an unpreserved error in two circumstances: (1) where the evidence is closely balanced, regardless of the nature of the error, or (2) where the error is so serious that the defendant was denied a substantial right and a fair trial, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467, 475 (2005). Prior to determining whether plain error occurred, however, we first determine whether error occurred at all. *People v. Lewis*, 234 Ill. 2d 32, 43, 912 N.E.2d 1220, 1227 (2009). If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied. *People v. Sargent*, 239 Ill. 2d 166, 189-90, 940 N.E.2d 1045, 1059 (2010). To determine whether any error occurred, we examine whether defendant was improperly subjected to double jeopardy. *Brown*, 2015 IL App (1st) 134049, ¶ 27, 36 N.E.3d 306.

¶ 35                              *2. Standard of Review*

¶ 36    Ordinarily, we review a trial court's judgment on the question of whether double jeopardy attaches for an abuse of discretion. See *People v. Brener*, 357 Ill. App. 3d 868, 870, 830 N.E.2d 692, 693 (2005) (trial court's denial of a motion to dismiss on double jeopardy grounds reviewed for an abuse of discretion). "However, where, as here, neither the facts nor the credibility of witnesses is at issue, we address a purely legal question, and our standard of review is *de novo*." *In re Gilberto G.-P.*, 375 Ill. App. 3d 728, 730, 873 N.E.2d 534, 537 (2007) (citing *Brener*, 357 Ill. App. 3d at 870, 830 N.E.2d at 693).

¶ 37                         *3. Merits of Defendant's Claim*

¶ 38    The constitutions of the United States and Illinois protect the accused from being placed in jeopardy twice for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. Jeopardy begins or attaches "when the accused has been arraigned and the jury impaneled and sworn." *People v. Friason*, 22 Ill. 2d 563, 565, 177 N.E.2d 230, 231 (1961). However, the bar against double jeopardy does not apply in every case where jurors are sworn. See *United States v. Perez*, 22 U.S. 579, 580 (1824) (stating "the law has invested Courts *** with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated"). The Illinois Supreme Court's decision in *Dreyer v. People*, 188 Ill. 40, 47, 58 N.E. 620, 622 (1900), similarly established a trial court may discharge a jury without the consent of the defendant as necessity requires. However, this necessity is weighed against the constitutionally guaranteed rights of the defendant: "[t]he doctrine of manifest necessity commands a trial judge not to foreclose a defendant's right to have a particular tribunal decide his fate unless the ends of justice would be defeated by continuing the proceedings." *People v. LaFond*, 343 Ill. App. 3d 981, 985, 799 N.E.2d 518, 521 (2003). On the other hand, if jeopardy did not attach to the swearing of only eight jurors,

we need not reach the issue of whether a manifest necessity existed to declare a mistrial. *Illinois v. Somerville*, 410 U.S. 458, 468 (1973).

¶ 39   Defendant contends the trial court placed him in jeopardy when it swore in eight jurors. As the United States Supreme Court has explained, its "cases have repeatedly stated the bright-line rule that 'jeopardy attaches when the jury is empaneled and sworn.' " *Martinez v. Illinois*, 572 U.S. ___ , ___, 134 S. Ct. 2070, 2072 (2014) (quoting *Crist v. Bretz*, 437 U.S. 28, 35 (1978)). In *Martinez*, the Supreme Court of Illinois permitted the defendant to be retried under a theory the defendant was not "subjected to the hazards of trial and possible conviction," and thus jeopardy did not attach, when the prosecution refused to participate in his first trial. *Id.* The United States Supreme Court reversed and reiterated the rule, "[a] jury trial begins, and jeopardy attaches, when the jury is sworn." *Id.* Noting the court had stated a bright-line rule in every case, the United States Supreme Court stated, "Jeopardy attaches when 'a defendant is "put to trial," ' and in a jury trial, that is 'when a jury is empaneled and sworn.' " *Id.* (quoting *Serfass v. United States*, 420 U.S. 377, 388 (1975)).

¶ 40   The United States Supreme Court's decision in *Crist* is one of the court's seminal double jeopardy cases. As Justice Stewart explained in the first paragraph of *Crist*, "The precise issue is whether the federal rule governing the time when jeopardy attaches in a jury trial is binding on Montana through the Fourteenth Amendment. The federal rule is that jeopardy attaches when the jury is empaneled and sworn; a Montana statute provides that jeopardy does not attach until the first witness is sworn." *Crist*, 437 U.S. at 29. Ultimately, the Court concluded, "[W]e explicitly hold *** [t]he federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy." *Id.* at 38. "The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury. *** [T]he defendant's 'valued right to have his trial completed by a particular tribunal' is now within the protection of the constitutional guarantee against double jeopardy, since it is that 'right' that lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn. [Citations.]" *Id.* at 35-36.

¶ 41   Later, the United States Supreme Court, citing *Crist*, stated, "There are few if any rules of criminal procedure clearer than the rule that 'jeopardy attaches when the jury is empaneled and sworn.' " *Martinez*, 572 U.S. at ___, 134 S. Ct. at 2074 (quoting *Crist*, 437 U.S. at 35). While the court has not defined the term "empaneled and sworn," it cited with approval 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, Criminal Procedure § 25.1(d) (3d ed. 2007). That section is now found at 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, Criminal Procedure § 25.1(d) (4th ed. 2015) and is basically unchanged from the version cited in *Martinez*.

¶ 42   In describing the holding in *Crist*, LaFave's treatise states, "In *Crist*, the Court held that the point at which jeopardy attaches is the moment at which the entire jury has been selected and has taken the oath required for service at trial." *Id.* The treatise goes on to state jeopardy attaches in a jury trial only after jury selection is complete and the judge has sworn the entire jury, including any alternate jurors. *Id.*

¶ 43   Although neither party cited any case involving facts similar to those presented in this case, *i.e.*, swearing jurors prior to completion of the selection process, our research has uncovered multiple cases addressing the issue of whether jeopardy attaches when only part of a jury has been sworn. Most are out-of-state authorities, but *People v. Boaz*, 222 Ill. App. 3d 363, 583

N.E.2d 714 (1991), is an Appellate Court, Fifth District, opinion. In that case, *voir dire* was completed, and the trial judge sent the prospective jurors to lunch. *Id.* at 364, 583 N.E.2d at 715. Over the lunch hour, counsel selected 12 jurors and 1 alternate. *Id.* After lunch, 11 jurors and the alternate were sworn, the twelfth juror not having returned on time. *Id.* Before the twelfth juror returned, the defendant moved to confine the State to prove the allegations in the bill of particulars, *i.e.*, the offense occurred on March 30, 1989, not March 5, 1989. *Id.* The State moved to amend its bill, but the defendant argued the State could not amend because the trial had already begun. *Id.*

¶ 44     The trial court ruled because only 11 jurors had been sworn, the trial had not yet begun, and it allowed the State leave to amend. *Id.* The defendant moved for a mistrial. *Id.* The court granted a mistrial but ruled jeopardy had not attached and the defendant was subject to retrial. *Id.* at 364-65, 583 N.E.2d at 715. The appellate court held jeopardy attaches in a jury trial once the jury is empaneled and sworn. *Id.* (citing *Crist*, 437 U.S. 28, and Ill. Rev. Stat. 1989, ch. 38, ¶ 3-4(a)(3)). The court went on to hold the jury had not yet been empaneled and sworn because the twelfth juror had not been sworn. *Id.*

¶ 45     Turning to the out-of-state cases, in *State v. Hedgspeth*, 974 So. 2d 150, 154 (La. Ct. App. 2008), a jury trial began on January 9, 2006. Ten of twelve jurors were selected and sworn. *Id.* The next day, the State moved for a continuance because, unbeknownst to it, deoxyribonucleic acid (DNA) testing had not been conducted. *Id.* The defendant objected on the grounds 10 jurors were already selected and sworn and he had a right to be tried before the jurors already selected. *Id.*

¶ 46     The *Hedgspeth* court found as follows: "The right to have one's trial completed by a particular tribunal is within the protection of the constitutional guarantee against double jeopardy, since it is that 'right' that lies at the foundation of the rule that jeopardy attaches when the *whole* jury is empaneled and sworn." (Emphasis added.) *Id.* at 154-55 (citing *Crist*, 437 U.S. 28). However, in the instant case, that "right" had not yet attached when the trial court granted the State's motion to dismiss the partial jury. The *Hedgspeth* court went on to say, "It is clear that double jeopardy did not attach when the trial court dismissed the partial jury." *Id.* at 155. The court further noted the public has an interest in affording the State one full and fair opportunity to present its evidence to an impartial jury. *Id.* (citing *Somerville*, 470 U.S. 458).

¶ 47     In *State v. Albert*, 430 So. 2d 1279, 1281 (La. Ct. App. 1983), six jurors had been selected and sworn when the prosecutor nol-prossed the charges. The defendant contended jeopardy attached in a jury trial when the first juror was sworn. *Id.* at 1282. Citing the federal rule under *Crist*, the court stated jeopardy attaches when the jury is empaneled and sworn. *Id.* Noting *Crist* does not address the issue of partial jury selection, the court cited the Louisiana Supreme Court case of *State v. Sermon*, 404 So. 2d 261 (La. 1981), where the supreme court found the selection and swearing of three jurors was insufficient to trigger double jeopardy. *Albert*, 430 So. 2d at 1282. The court rejected the defendant's contention jeopardy attached in a jury trial when the first juror is sworn, finding no authority whatsoever for that argument. *Id.*; see also *State v. Saltzman*, 128 So. 3d 1060 (La. Ct. App. 2013); *State v. Tuckson*, 781 So. 2d 807 (La. Ct. App. 2001).

¶ 48     California courts have also addressed this issue. In *In re Mendes*, 592 P.2d 318, 319 (Cal. 1979) (*en banc*) (superseded by statute on other grounds), the California Supreme Court held selection of a jury in a criminal case is not completed and jeopardy does not attach until all of the jurors, including any alternate jurors, are sworn.

¶ 49    In *Mendes*, 12 jurors were chosen and sworn, and the venire was exhausted at the end of the day before an alternate could be selected. *Id.* at 320. The trial court announced, " 'We're going to go ahead without an alternate, and you can put that on the record.' " *Id.* Before counsel arrived the next morning, a juror informed the court her brother died during the night, and the court excused her from jury duty. *Id.* When counsel returned, the court relayed what happened and suggested counsel choose a replacement juror and two alternates. *Id.* Defendant moved for a mistrial on double jeopardy grounds. *Id.*

¶ 50    The California Supreme Court concluded selection of the jury had not been completed because alternate jurors had not been chosen and sworn. *Id.* at 321. It further held, where a court indicates the trial will be conducted with alternates, empanelment of the jury is not deemed complete until alternates are selected and sworn. *Id.* Noting *Crist* does not define "jury" or "empaneled and sworn," the court could not conclude *Crist* mandated a different result. *Id.* at 322. The court went on to find the trial court intended to select alternates and further, even if the trial court's comment about proceeding without alternates was accepted, the supreme court noted the trial court had the right to change its mind about selecting alternates. *Id.* at 835-36.

¶ 51    In *People v. McDermott*, 51 P.3d 874, 899 (Cal. 2002), the California Supreme Court held, where a court has indicated it intends to select alternates, empanelment is not complete until alternates are selected and sworn. The supreme court further concluded its decision did not conflict with *Crist* and declined the defendant's request to overrule *Mendes*. *Id.*; see also *United States v. Trigg*, 988 F.2d 1008, 1010 (9th Cir. 1993) (dismissal of 3 of 12 sworn jurors for unavailability before selection of alternate jurors did not violate the defendant's right to retain a chosen jury as recognized in *Crist*); *People v. Hernandez*, 64 P.3d 800, 802-06 (Cal. 2003) (discussing policies underlying double jeopardy principles and protecting the interest of the accused in retaining a chosen jury).

¶ 52    Here, the trial court announced its intention to select 12 jurors and 2 alternate jurors. Only eight jurors had been selected and sworn at the time the court declared a mistrial. Thus, jury selection had not been completed, a jury had not been "empaneled and sworn," and therefore, jeopardy had not yet attached. Because jeopardy had not attached, we need not reach the issue of whether manifest necessity supported the granting of a mistrial.

¶ 53    We suggest the better practice for trial courts is to wait to swear jurors until the entire panel, including alternates, has been selected. This would preclude any argument jeopardy had attached. Further, in this case, while the trial judge's assessment of the situation persuaded her to *sua sponte* declare a mistrial, she should have consulted with the remaining prosecutor to see if he was able to try the case or whether he could try the case with further assistance from other experienced assistants in the State's Attorney's office. The judge could also have consulted with the parties about suspending the proceedings until assistant State's Attorney Tharp was able to resume her duties. Instead, there was a second trial and an appeal on an avoidable issue, and defendant was incarcerated while awaiting retrial.

¶ 54                                    4. *The Dissent*

¶ 55    We note the dissent fails to cite a single case to support its theory swearing some but not all of the jurors constitutes empanelment of a jury. In fact, every case uncovered dealing with this issue holds the opposite. While we recognize the importance of a defendant having his case tried by a particular jury, there was no "particular jury" yet chosen in this case. The dissent

promotes the idea a bright line is needed. However, the bright line already exists. It occurs once the entire jury is empaneled and sworn.

¶ 56                              B. Other-Crimes Evidence

¶ 57    Defendant argues his prior burglary conviction was improperly admitted as evidence of his intent and knowledge. Defendant contends his prior conviction was used as improper propensity evidence where the State failed to introduce any other evidence of his intent to commit attempt (residential burglary). We disagree.

¶ 58    Other-crimes evidence shows "a crime took place and that the defendant committed it or participated in its commission." *People v. Pikes*, 2013 IL 115171, ¶ 15, 998 N.E.2d 1247. Other-crimes evidence is inadmissible to show a defendant's propensity to commit crime. *Id.* ¶ 16; Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, " '[i]t is well settled under the common law that evidence of other crimes is admissible if relevant for any other purpose than to show a defendant's propensity to commit crimes.' " *People v. Patterson*, 2013 IL App (4th) 120287, ¶ 58, 2 N.E.3d 642 (quoting *People v. Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119). Other purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). The admissibility of evidence rests within the sound discretion of the trial court, and the court's decision will not be disturbed absent an abuse of that discretion. *Pikes*, 2013 IL 115171, ¶ 12, 998 N.E.2d 1247.

¶ 59    In this case, the State presented a single prior residential burglary conviction for the limited purpose of showing knowledge and intent. The trial court specifically stated during the proceedings the prior conviction was received on the issue of defendant's intent and knowledge and may be considered by the jury only for that limited purpose. In addition, the State's argument was limited to telling the jury the prior conviction showed defendant's intent to commit a theft in Morgan's apartment. Finally, the jury was properly instructed to limit its consideration of the prior conviction to the issue of knowledge and intent. While defendant argues the State failed to introduce any other evidence to show his intent, the jury was entitled to infer defendant's intent to commit residential burglary from his conduct. See *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 44, 955 N.E.2d 1244 (intent may be inferred from the defendant's conduct surrounding the act and from the act itself).

¶ 60    Both Alexander and Roberts testified they observed defendant climb onto the air conditioning unit with a flat pry bar and attempt to open the apartment window. Alexander testified he followed defendant from the time he saw him trying to open the window until defendant was stopped by police. According to Alexander's testimony, defendant recklessly sped away from the apartment complex through the grass without turning on his headlights. After the police stopped the truck, they discovered a flat pry bar inside. Thus, even assuming, *arguendo*, the other-crimes evidence was improperly admitted, the result would not change, as the evidence against defendant was overwhelming. See *People v. Hall*, 194 Ill. 2d 305, 339, 743 N.E.2d 521, 541 (2000) ("Although the erroneous admission of other-crimes evidence ordinarily calls for reversal, the evidence must have been a material factor in the defendant's conviction such that, without the evidence, the verdict likely would have been different."). Accordingly, defendant's argument the trial court erred in admitting the other-crimes evidence fails.

¶ 61                             C. Defendant's Sentencing Claims

¶ 62        Defendant next argues the trial court erred in sentencing where (1) it "made findings which
defy the record," (2) it failed to adequately consider the evidence presented in mitigation, and
(3) his six-year sentence for possession of burglary tools violates the prohibition against
imposing an extended-term sentence on a lesser class felony offense.

¶ 63        "A reviewing court gives substantial deference to the trial court's sentencing decision
because the trial judge, having observed the defendant and the proceedings, is in a much better
position to consider factors such as the defendant's credibility, demeanor, moral character,
mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d
656. Because a trial court has broad discretion in imposing a sentence, this court will not
overturn the sentence absent an abuse of discretion. *People v. Chester*, 409 Ill. App. 3d 442,
450, 949 N.E.2d 1111, 1118-19 (2011). "A sentence will be deemed an abuse of discretion
where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly
disproportionate to the nature of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 212, 940
N.E.2d 1062, 1066 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629
(2000)).

¶ 64                                 1. *Sentencing Factors*

¶ 65        Defendant argues the trial court erred by discounting the impact incarceration would have
on his family when it found others would step up to fill the void. However, the trial court did
not solely base its sentencing decision on that statement. In sentencing defendant, the court
stated, in relevant part, the following:

           "I have read the letters and I agree with [the State] that having—being in a situation
     where there's an elderly parent involved, the void that will be created by you going to
     prison will be filled by somebody. There are people out there. They may appreciate the
     fact that you're doing it for them, but there are people out there that will take care of
     your loved ones.

           What I always find interesting in these situations when people say it's not for him,
     it's for the people he is taking care of *** is in looking at your [presentence
     investigation report [(PSI)] if, in fact, the reason why you turned to criminal behavior
     was in response to losing your father at 16 or 17, and now you're asking you to be given
     a lighter sentence because you want to help your mother.

           Did you help your mother at 17 by getting arrested, at 18 by getting arrested twice,
     [at] 19 getting arrested once? Did you help your mother when you were sent to Boot
     Camp or the Department of Corrections? Do you think all those things—and this is not
     an actual question—do you think all those things helped your mother? Did you help
     your mother at any of these times? No, you did not because you were putting your
     wants before her needs. So that argument is a wash, doesn't work for me."

¶ 66        On review, we are not to focus on a few words or sentences of the sentencing court but,
rather, should consider the record as a whole. See *People v. Andrews*, 2013 IL App (1st)
121623, ¶ 15, 2 N.E.3d 1137. Indeed, our review of the entire sentencing hearing reveals the
trial court did not base its sentencing decision on speculation or mistaken beliefs. Instead, the
record shows the trial court considered the factors in aggravation and mitigation and the PSI
and based defendant's sentence on his extensive criminal history, as well as the danger he

- 11 -

presented to the community. The remarks cited by defendant show the trial court was simply responding to defense counsel's argument defendant should receive a lesser sentence because he took care of his mother. The trial court, noting the number of letters it considered in mitigation from family members, felt the fact he helped his mother did not outweigh the severity of defendant's actions and criminal record such that he should receive a lesser sentence. The court's comments were entirely appropriate in the context of the arguments made at sentencing.

¶ 67    Defendant similarly contends the trial court erred when it found the offenses were not related to defendant's drug addiction. However, the trial court made no such finding. Instead, it merely addressed defense counsel's argument defendant's drug use should be considered in sentencing. Defendant also discussed his drug use in his letter, which was considered by the court in mitigation. Notably, however, defendant states in that letter, "the 2009 residential burglary was the only time [he] allowed [his] addiction to heroin to influence [him] to commit an offense of that nature, and severity, and [it] remains the only time to this day."

¶ 68    In addressing the argument at sentencing, the trial court stated, in relevant part, the following:

> "There is a very, very scary pattern that seems to have escalated from when you first started this. ***
>
> I have to look at what has happened. I have to look at your history. I have to look at this case, and I believe without hesitation that you're a danger to this community. I believe that you have a very, very serious problem and that you have not accepted that.
>
> Drugs may be an issue with you. I don't think drugs are your problem. I'm not a doctor. Hopefully you will see one when you are in prison. I don't know, but you've got some serious problems when it comes to knowing boundaries, and there is—if you say it's because of drugs, maybe the drugs caused you to forget where those boundaries are. I'm not sure, but you have got a serious problem.
>
> And I tell you what, you're somewhat lucky that you haven't been killed in the process of doing this because that's absolutely a possibility for you. [There are] a whole lot of people that are addicted to drugs that don't do the things you're doing, so I don't buy that either.
>
> You can[ ]not seem to follow the rules. [You've] successfully completed Boot Camp, but after you got out you broke the law again, so that's really not successful as far as I'm concerned. Your record is replete with reasons to not give you a shorter sentence, and I'm not going to."

¶ 69    It is clear from our review of the entire sentencing hearing, the trial court was stating its belief drugs may or may not have been a factor while rejecting drug use as an outright excuse for defendant's behavior. The court's other statements at sentencing make it clear it did not base its sentencing decision on the drug-use issue. Accordingly, defendant's argument in this regard fails.

¶ 70    Finally, defendant maintains the trial court erred in failing to adequately consider the evidence presented in mitigation. As evidence of his belief, defendant cites the fact his 10-year sentence for attempt (residential burglary) was "far closer to the maximum allowable sentence."

¶ 71    Upon reviewing the record, however, we find the trial court stated it considered the evidence presented in mitigation and aggravation. "[T]he reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *Stacey*, 193 Ill. 2d at 209, 737 N.E.2d at 629. The court was presented with defendant's PSI, a number of letters from family members, and a letter from defendant. A trial court is presumed to have considered any evidence in mitigation before it. *People v. Partin*, 156 Ill. App. 3d 365, 373, 509 N.E.2d 662, 666 (1987). Moreover, there is no indication from the record the court failed to consider the evidence presented in mitigation.

¶ 72    Here, defendant was eligible for a maximum extended term of 14 years in prison. See 730 ILCS 5/5-4.5-35(a) (West 2012). The trial court weighed the factors in aggravation and mitigation and fashioned a 10-year sentence. This sentence was clearly within the guidelines and neither at variance with the spirit and purpose of the law, nor manifestly disproportionate to the offense. *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 629. Finally, while defendant may have shown some rehabilitative potential, such potential " 'is not entitled to greater weight than the seriousness of the offense.' " *Alexander*, 239 Ill. 2d at 214, 940 N.E.2d at 1067 (quoting *People v. Coleman*, 166 Ill. 2d 247, 261, 652 N.E.2d 322, 329 (1995)). Accordingly, the court did not abuse its discretion in sentencing defendant to an extended term of 10 years in prison for his attempt (residential burglary) conviction.

¶ 73                                  2. *Extended-Term Sentence*

¶ 74    Defendant also argues the trial court erred in imposing a six-year extended-term sentence for the Class 4 felony of possession of burglary tools. Defendant contends that six-year sentence violates the prohibition against imposing an extended-term sentence on a lesser class felony offense. Defendant maintains because he was also convicted of residential burglary, which is a Class 2 felony offense, he was ineligible for an extended sentence on the possession of burglary tools conviction.

¶ 75    The State argues defendant has forfeited review of the issue because he failed to raise it in the trial court. In reply, defendant urges this court's review of the issue under the plain-error doctrine. See *supra* ¶ 34. The State concedes, absent forfeiture, the trial court erred and the sentence should be modified to a three-year term. As stated above, before we reach the issue of plain error, we first determine whether any error occurred. See *Lewis*, 234 Ill. 2d at 43, 912 N.E.2d at 1227.

¶ 76    A defendant convicted of multiple offenses of differing classes may be sentenced to an extended-term sentence pursuant to section 5-8-2(a) of the Unified Code of Corrections (730 ILCS 5/5-8-2(a) (West 2012)) only on those offenses within the most serious class. *People v. Jordan*, 103 Ill. 2d 192, 205-06, 469 N.E.2d 569, 575 (1984). "[W]hen a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may be imposed only on the conviction within the most serious class." *People v. Thompson*, 209 Ill. 2d 19, 23, 805 N.E.2d 1200, 1201 (2004). An exception allowing the imposition of extended-term sentences on differing class offenses exists if the offenses arise from unrelated courses of conduct in which there was a substantial change in the nature of the defendant's criminal objective. *People v. Bell*, 196 Ill. 2d 343, 354, 751 N.E.2d 1143, 1149 (2001).

¶ 77    In this case, the State did not argue and the trial court did not find the charges arose from unrelated conduct. Indeed, the record indicates both charges originated from a single course of conduct. Thus, the trial court should not have sentenced defendant to an extended, six-year

- 13 -

term for the Class 4 offense of possession of burglary tools as that offense was not the most serious conviction. The most serious conviction was the Class 2 offense of attempt (residential burglary). The court was only statutorily authorized to impose an extended term on the conviction with the most serious class. *Jordan*, 103 Ill. 2d at 205-06, 469 N.E.2d at 575; 730 ILCS 5/5-8-2(a) (West 2012). Imposing an extended term on the Class 4 possession of burglary tools conviction was therefore error.

¶ 78 Having found error, we turn now to whether either prong of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059. Here, "the [trial] court's misapplication of the law amounted to plain error because it affected defendant's fundamental right to liberty." *People v. Smith*, 2016 IL App (1st) 140496, ¶ 15, 51 N.E.3d 21. Accordingly, we vacate that sentence and remand for resentencing. See *id.*

¶ 79                                            D. Defendant's *Krankel* Claim

¶ 80 Defendant argues the trial court erred by not inquiring into his posttrial *pro se* complaints of ineffective assistance of trial counsel. Specifically, defendant claims he was entitled to some inquiry by the court into the allegations contained in his posttrial letter addressed to the "Appeals Clerk." Defendant argues the court's failure in this regard violated *Krankel* and its progeny. We disagree.

¶ 81 Pursuant to *Krankel*, when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, " 'the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed.' " *People v. Jolly*, 2014 IL 117142, ¶ 29, 25 N.E.3d 1127 (quoting *People v. Moore*, 207 Ill. 2d 68, 77-78, 797 N.E.2d 631, 637 (2003)).

¶ 82 We acknowledge, for *Krankel* purposes, a *pro se* defendant is not required to do any more than bring his ineffective-assistance claim to the trial court's attention. *Moore*, 207 Ill. 2d at 79, 797 N.E.2d at 638. However, that was not done in this case. While the letter was sent to the circuit clerk's office, it was not addressed to the trial court. Instead, the envelope was addressed to the "Appeals Clerk." In addition to the letter, the envelope contained a notice of appeal, a copy of his previously filed posttrial motion, and various other documents. The clerk stamped the documents, including the letter, which are part of the record on appeal. The letter itself was addressed "To whom it may concern." In the body of the letter, defendant stated he wanted to "inform the Appellate Court and anyone else it may concern" of errors he believed were made during his trial. Neither his trial counsel nor the State received copies of that letter. Indeed, the trial court, defendant's trial counsel, and the State were unaware of the mailing. The record does not reflect any follow-up with the trial court on defendant's part with regard to the letter or the claims therein. Thus, defendant did not bring the letter containing his ineffective-assistance claims to the court's attention.

¶ 83 Moreover, the mailing was received by the clerk's office on March 20, 2014. Defendant made no mention of his ineffective-assistance claims to the trial court despite appearing in person two days before, on March 18, 2014. See *People v. Lewis*, 165 Ill. App. 3d 97, 109, 518 N.E.2d 741, 749 (1988) (finding the defendant forfeited his posttrial ineffective-assistance claims where the trial court, defendant's counsel, and the State were all unaware of defendant's letter and the defendant did not himself raise the claims despite appearing personally in court

- 14 -

after sending the letter). While a *pro se* defendant is not required to do any more than bring his claim to the trial court's attention, in this case defendant failed to do so. Accordingly, we find defendant has forfeited his *pro se* ineffective-assistance-of-counsel claim. Thus, he is not entitled to remand on that issue.

¶ 84                                   III. CONCLUSION

¶ 85       For the reasons stated, we vacate the trial court's imposition of an extended-term sentence on defendant's possession of burglary tools conviction and remand for resentencing consistent with this opinion. We otherwise affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 86       Affirmed in part and vacated in part; cause remanded with directions.

¶ 87       JUSTICE STEIGMANN, dissenting.

¶ 88       Although I agree with most of what my distinguished fellow panelists in the majority have written, I disagree with their ultimate conclusion that defendant was not placed in jeopardy when the trial court swore in eight jurors and then declared a mistrial in the absence of any necessity for doing so. Accordingly, I respectfully dissent.

¶ 89       The majority correctly quotes Professor LaFave's treatise (*supra* ¶ 42), but with all due respect to Professor LaFave and his preeminent position as a scholar of criminal law and procedure, I conclude his treatise overstates the holding in *Crist*. In his treatise, Professor LaFave writes the following: "In *Crist*, the [Supreme] Court held that the point at which jeopardy attaches is the moment at which the entire jury has been selected and has taken the oath required for service at trial." 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, Criminal Procedure § 25.1(d) (4th ed. 2015). Professor LaFave erred in his analysis of *Crist* when he wrote that, supposedly according to that case, jeopardy attaches the moment "the *entire* jury has been selected" and sworn. (Emphasis added.) *Id.* In fact, not only does the word *entire* not appear in *Crist*, but the facts of that case do not at all support the notion that the entire jury must be selected.

¶ 90       As Justice Stewart explained in the first paragraph of *Crist*, "The precise issue is whether the federal rule governing the time when jeopardy attaches in a jury trial is binding on Montana through the Fourteenth Amendment. The federal rule is that jeopardy attaches when the jury is empaneled and sworn; a Montana statute provides that jeopardy does not attach until the first witness is sworn." *Crist*, 437 U.S. at 29. Ultimately, the Supreme Court concluded, "[W]e explicitly hold *** [t]he federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy." *Id.* at 38. Interestingly, for purposes of the present case, the Court earlier in that case wrote the following:

           "The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury. ***

           *** [T]he defendant's 'valued right to have his trial completed *by a particular tribunal*' is now within the protection of the constitutional guarantee against double jeopardy, since it is that 'right' that lies at the foundation of the federal rule that

- 15 -

jeopardy attaches when the jury is empaneled and sworn. [Citations.]" (Emphasis added.) *Id.* at 35-36.

That statement suggests that an accused's interest in retaining as a chosen jury those jurors who have been empaneled and sworn would apply just as much to the 8 jurors who were empaneled and sworn in the present case as to all 12 jurors who ultimately might have been empaneled and sworn.

¶ 91    The majority is correct that the decision of the Appellate Court, Fifth District, in *Boaz* is consistent with its conclusion in this case, but I do not believe that *Boaz* should be followed. The peculiar circumstances in *Boaz* concerning jury selection were described in that case as follows:

> "[P]rospective jurors were assembled, *voir dire* was conducted, and the State's Attorney, defendant's counsel and the circuit judge recessed to chambers to select 12 jurors and one alternate. Before recessing, however, the judge told the prospective jurors that they were free to break for lunch. After lunch, the names of the persons selected were announced. Eleven jurors and one alternate were sworn. The twelfth juror, whose name had been announced, had not yet returned from lunch, and so had not yet been sworn. Before the twelfth juror returned, defendant moved to confine the State to prove the allegations as specified in the bill of particulars, namely[,] that the offense occurred on March 30, 1989, not March 5, 1989. The State moved to amend, but defendant argued that the State could not amend because the trial had already begun. [Citation.] The circuit court ruled that since only 11 jurors had been sworn, the twelfth having not yet returned from lunch, the trial had not yet begun, and the court granted the State leave to amend. Defendant moved for a mistrial. The circuit court granted it but ruled that jeopardy had not attached and that defendant was subject to retrial." *Boaz*, 222 Ill. App. 3d at 364-65, 583 N.E.2d at 715.

¶ 92    On these facts, the Fifth District concluded (with one judge dissenting) that jeopardy "would not have attached until the twelfth juror had been sworn." *Id.* at 365, 583 N.E.2d at 715. However, in support of this conclusion, the Fifth District cited only *Crist*, which, as noted, says nothing at all about swearing in the *entire* jury before jeopardy would attach. *Id.*

¶ 93    This court should decline to follow *Boaz* for the following reasons: (1) the double jeopardy clause is serious business, appearing in the constitution itself, and is not merely some inference the courts have drawn from constitutional language; (2) a clear, bright line should govern the courts' handling of this important constitutional right; (3) the United States Supreme Court has held that once a jury is empaneled and sworn, jeopardy attaches; (4) the United States Supreme Court has never said—nor is there any reason for it to say—that empaneling and swearing less than an entire jury somehow no longer causes jeopardy to attach; (5) the language in *Crist* (cited earlier in this dissent) suggests empaneling and swearing a partial jury implicates a defendant's interests sufficiently for jeopardy to attach; and (6) what occurred in this case was entirely unnecessary because a trial court is *never* under any obligation to empanel and swear a *partial* jury, as happened here. I agree with the majority that a court's doing so is entirely ill-advised and unnecessary.

¶ 94    My only other disagreement with the majority is its conclusion that the plain-error doctrine applies in this case regarding the trial court's imposing an extended-term sentence on the less serious offense of possession of burglary tools, a Class 4 felony. *Supra* ¶ 78. The majority is correct that the trial court erred by doing so because the court was statutorily authorized to

impose an extended-term sentence only on the conviction of the most serious offense, which in this case was defendant's conviction of attempt (residential burglary), a Class 2 felony. The 10-year sentence the court imposed upon that conviction was an extended term. However, the court's error regarding the less serious offense did not constitute plain error.

¶ 95     Although the majority concludes that the trial court's imposition of an extended-term sentence upon defendant for his conviction of the less serious offense " 'amounted to plain error because it affected defendant's fundamental right to liberty' " (*supra* ¶ 78 (quoting *Smith*, 2016 IL App (1st) 140496, ¶ 15, 51 N.E.3d 21)), that conclusion is demonstrably not correct. No matter what the trial court does on remand for resentencing on the less serious offense, defendant's "fundamental right to liberty" is not at issue. Indeed, it cannot even be affected. That is because the majority affirmed defendant's 10-year sentence, which will stand regardless of any sentence on the less serious offense the court imposes on remand.