# Illinois Official Reports

## Appellate Court

---

> ### *People v. Cruz*, 2019 IL App (1st) 170886

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE CRUZ, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-17-0886 |
| Filed | October 25, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CR-6375; the Hon. James Karahalios, Judge, presiding. |
| Judgment | Affirmed in part, modified in part, and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Elizabeth A. Botti, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Noah Montague, and Justin R. Erb, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a jury trial, defendant Jose Cruz was convicted of aggravated driving under the influence of alcohol (DUI) and driving while his license was revoked or suspended (DWR). He was sentenced to concurrent prison terms of 16 years for aggravated DUI and 6 years for DWR. Defendant now appeals, arguing that (1) he was denied a fair trial because the State's closing argument mentioned facts not in evidence, (2) his aggravated DUI sentence was excessive, (3) the trial court erred by imposing an extended-term sentence for DWR, and (4) the case should be remanded to the circuit court so that he may challenge the imposition of certain fines and fees and the calculation of his *per diem* credit. We affirm defendant's conviction and sentence for aggravated DUI, reduce his sentence for DWR, and remand the matter so that defendant may file a motion raising his fines and fees arguments.

¶ 2                                JURISDICTION

¶ 3 Defendant filed a motion to reconsider his sentence, which the trial court granted. Defendant was resentenced on April 3, 2017. He filed his notice of appeal that same day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Dec. 11, 2014), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                BACKGROUND

¶ 5 After a traffic stop in April 2016, defendant was charged by indictment with aggravated DUI (625 ILCS 5/11-501(a)(2) (West 2016)) and DWR (*id.* § 6-303(a)). Based on previous convictions for similar offenses, the State sought to sentence defendant as a Class X offender for aggravated DUI and as a Class 4 offender for DWR.

¶ 6 Prior to trial, defendant agreed to participate in a plea discussion conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). The court admonished defendant on the nature and potential consequences of a Rule 402 conference, which, through a Spanish interpreter, defendant stated he understood. After the conference, which was conducted off the record, defense counsel informed the court that defendant claimed he had not understood the court's preconference admonishments because he did not receive his medication in jail that morning. Personally addressing the court, defendant then explained that he normally took sleeping pills at night and the antidepressant Zoloft in the morning but did not receive his Zoloft that morning because he left for court before the jail nurse arrived.

¶ 7 The court issued an order requesting defendant's medication records, which showed that defendant was prescribed to take acetaminophen twice a day and the antidepressant mirtazapine at night. The records also indicated that defendant had received all of his prescribed doses on the day of and the day preceding the Rule 402 conference. When confronted with the records, defendant apologized to the court and claimed that the jail staff sometimes dispensed his medications incorrectly. The court stated for the record that defendant addressed the court in "perfect" English and that the Spanish interpreter was "absolutely not needed." However, defendant continued to use an interpreter throughout the proceedings.

¶ 8        The State next filed a motion *in limine* requesting the court to take judicial notice of and instruct the jury on section 1286.40 of Title 20 of the Illinois Administrative Code (20 Ill. Adm. Code 1286.40 (2015)), which explains that the concentration of alcohol in a person's blood serum should be divided by 1.18 to calculate that person's whole blood alcohol concentration (BAC). Defense counsel objected, arguing that the State should be required to have an expert witness testify to the calculation because it was "not something that the average individual knows and could calculate properly."[1] The court granted the State's motion over the objection.

¶ 9        At trial, Elk Grove police officer Christopher Palmese testified that he was on patrol in a marked squad car on the morning of April 3, 2016. At around 2:30 a.m., Palmese stopped at a red traffic light at the intersection of Elmhurst and Higgins Roads. He was in the innermost of two left turn lanes and was directly behind another driver, later identified as defendant. When defendant made the left turn, Palmese observed "[t]he majority, if not [all]" of his vehicle drift into the outermost turn lane before veering back into its original lane. Palmese followed defendant, who was "swerving within in [his] lane," for another 200 feet before activating his emergency lights. Defendant activated his right turn signal and, although there was space on the right shoulder, pulled left into the "median" separating directions of traffic. Palmese approached defendant's vehicle and noticed that his eyes were "glassy." Defendant informed Palmese that he was coming from an alcohol-serving establishment and that he had been drinking there. Palmese requested defendant's driver's license, but he was unable to produce one. Instead, defendant provided Palmese with his name and date of birth. Palmese returned to his squad car, called for assistance, and entered defendant's information into a computer database.

¶ 10        When another officer arrived, Palmese requested that defendant submit to field sobriety testing. As defendant exited his vehicle for the tests, Palmese noticed that he smelled of alcohol and was "unsure" and "very hesitant" in his gait. Palmese first administered the horizontal gaze nystagmus test, which required defendant to track a pen with his eyes without moving his head. During the first phase of the test, defendant was unable to smoothly follow the pen and exhibited a "distinct and sustained" nystagmus in his left eye. During the second phase of the test, defendant simply "stare[d] straight ahead" each time despite Palmese's repeated instructions to follow the pen with his eyes. Palmese concluded the test after several unsuccessful attempts. Based on defendant's performance, Palmese concluded that he had been drinking.

¶ 11        Palmese next administered the "walk-and-turn test," which required defendant to take nine quick, heel-to-toe steps in a straight line while counting them aloud. After the nine steps, defendant was to turn around and repeat the process in the opposite direction. Palmese explained and demonstrated how to perform the test properly. When defendant attempted the test, he instead took 14 slow "baby steps" without counting aloud or turning around.

¶ 12        Finally, Palmese administered the "one-legged stand test," which required defendant to stand on one leg with the other raised in front of him while counting aloud for 30 seconds.

---

[1]Defense counsel also objected on the grounds that the proper conversion factor could be anywhere between 1.12 and 1.20. However, the court noted on the record that counsel withdrew the argument in an off-the-record conversation because defendant's whole BAC would have exceeded the legal limit under any of the conversion factors.

Palmese explained and demonstrated how to perform the test. After several attempts, defendant was only able to hold his leg in the air for three to four seconds.

¶ 13 After the testing, Palmese handcuffed defendant, who "kind of resisted at first" and "plead[ed]" with the officers not to arrest him. The officers then had to assist defendant into the back of Palmese's squad car. Once inside, defendant stated that he "only had three beers" and that the officers were "killing [him]." Palmese informed defendant of the *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), and defendant "quieted down." On the 10-minute drive to the police station, Palmese noticed that defendant "wobbl[ed] around" in the back seat, "kept putting his head down," and "almost *** fell asleep." Palmese testified that defendant spoke English throughout the encounter and was understandable despite having "slurred and delayed" speech.

¶ 14 The State published footage of the traffic stop captured by cameras within Palmese's squad car. The video begins after defendant's lane violation and does not clearly show the results of the nystagmus test, but it corroborates Palmese's testimony in all other material aspects.

¶ 15 At the police station, Palmese read defendant a warning form explaining that the refusal to submit to a breath test would result in a longer suspension of his driver's license than if the test determined him to be intoxicated. Even so, defendant refused the breath test.

¶ 16 On cross-examination, Palmese acknowledged that it was cold, dark, and windy outside at the time of the stop. Defendant was not wearing a coat and repeatedly put his hands in his pockets to stay warm. Palmese did not ask defendant whether he had any physical impairments or whether he was on medication before the sobriety testing. Defendant was not instructed on how to perform the tests in Spanish.

¶ 17 Dr. Ellen Magas-Papadimitriou testified that she treated defendant at Alexian Brothers Medical Center at around 6:51 a.m. on the day of his arrest. She identified defendant's medical records from that day, which included the results of a routine blood test performed by the hospital's in-house laboratory. The blood draw was not requested by law enforcement. According to the test results, defendant's blood serum alcohol concentration was 190 milligrams per deciliter.

¶ 18 On cross-examination, Dr. Magas-Papadimitriou testified that she did not personally draw defendant's blood but was in the room at the time. Although she was not "100 percent certain," she stated that it would be "highly unlikely" that an alcohol swab was used as a disinfectant. She did not personally transport defendant's blood to and from the laboratory and did not personally ensure that the laboratory equipment was properly calibrated.

¶ 19 The State then entered a certified copy of defendant's driving abstract, which showed that his license was revoked at the time of the traffic stop and that he had numerous previous convictions for DUI and DWR.

¶ 20 The case proceeded to a jury instruction conference, where the State proposed instructing the jury that:

> "It is a judicially noticed fact that the blood serum *** alcohol concentration result will be divided by 1.18 to obtain a whole blood equivalent. You may, but are not required to, accept as conclusive any fact judicially noticed."

Defense counsel objected, renewing her argument that the conversion formula was an inappropriate subject for judicial notice.

¶ 21 Counsel also objected to the State's proposal to instruct the jury that, in accordance with Illinois Pattern Jury Instructions, Criminal, No. 23.30 (approved Dec. 8, 2011):

> "If you find that at the time the defendant drove a vehicle that the amount of alcohol concentration in the defendant's blood or breath was 0.08 or more, you may presume that the defendant was under the influence of alcohol. You never are required to make this presumption. It is for the jury to determine whether the presumption should be drawn. You should consider all of the evidence in determining whether the defendant was under the influence of alcohol."

¶ 22 The court agreed to give both instructions over the defense's objections, and the defense rested without presenting evidence.

¶ 23 Prior to closing arguments, the court admonished the jury that "the things which are said in closing arguments are not evidence and cannot be considered by you as evidence. For the umpteenth time, the only things that you can use as evidence to determine the facts are the sworn testimony of the witnesses and the exhibits ***."

¶ 24 During the State's argument, the prosecutor told the jury that, among other things, the court would instruct them that "[t]he term alcohol concentration means *** grams of alcohol per 100 milliliters of blood." The prosecutor then recalled the testimony that defendant's blood serum alcohol concentration was 190 milligrams per deciliter and explained that, "as a matter of math," that was equivalent to 0.19 grams per 100 milliliters. The prosecutor further explained that, if the jury were to accept the judicially noticed conversion formula, they would divide the blood serum concentration by 1.18 to arrive at defendant's whole BAC of 0.16.

¶ 25 In response, defense counsel attacked the blood draw as "absolutely irrelevant" and a "red herring," arguing that it was unreliable because Dr. Magas-Papadimitriou did not draw defendant's blood, could not say that it was not "contaminated" from various sources, and did not confirm that the laboratory equipment was properly calibrated. Counsel also argued that "[y]ou heard nothing about any mathematical equations. You heard nothing about whole blood or blood serum or percentages."

¶ 26 After arguments, the court admonished the jurors, *inter alia*, that they were to consider only the testimony of the witnesses, the trial exhibits, and judicially noticed facts. The court also reminded the jury that "[y]ou may, but are not required to, accept as conclusive any facts judicially noticed" and that "any statement or argument made by the attorneys which is not based on the evidence should be disregarded." Consistent with the prosecutor's statements during closing argument, the court then instructed the jury that a person's whole BAC is expressed in terms of "grams of alcohol per 100 milliliters of blood" and that it was a judicially noticed fact that a person's whole BAC is calculated by dividing the blood serum alcohol concentration by 1.18. Finally, the court instructed the jurors that, if they found that defendant's whole BAC was 0.08 or greater at the time he was driving, they were permitted, but not required, to presume that defendant was under the influence of alcohol at that time.

¶ 27 The jury found defendant guilty of DUI and DWR. Defendant filed a motion for a new trial, which the court denied.

¶ 28 The case proceeded to a sentencing hearing, where the court acknowledged receipt of defendant's presentence investigation (PSI) report. According to the report, defendant's criminal history included five previous DUI convictions and two DWR convictions. The report also stated that defendant was born in El Salvador and dropped out of school after the sixth

grade to help support his family. Defendant was drafted into the Salvadoran army at age 13, where he served as a lieutenant and combat foreman until being honorably discharged. He immigrated to the United States in 1983 and had been employed as a laborer in the years preceding his arrest in the present case. Although defendant had not seen a mental health professional prior to his most recent arrest, he believed that he suffered from posttraumatic stress disorder because of his time in the military. He was diagnosed with depression and prescribed psychotropic medication after a postarrest suicide attempt.

¶ 29    With respect to substance abuse, defendant reported that he drank alcohol on "rare social occasions," usually consuming 8 to 10 beers per month. He acknowledged having three DUI arrests but stated that he had never been treated or evaluated for alcohol abuse. Documents in the record also showed that defendant was diagnosed with "alcohol abuse disorder" after the present offense and had completed a substance abuse treatment program while the case was pending.

¶ 30    In aggravation, the State emphasized defendant's criminal history, noting that he was on conditional discharge for his most recent DWR conviction at the time of the present offense. In reference to the substance abuse section of the PSI report, the State argued that defendant was "in denial about his drinking and driving problem" and noted that he had been arrested for DUI six times, not three. The prosecutor also expressed skepticism that defendant had never been evaluated for his alcohol abuse, asserting, "I'm sure there was some court-ordered treatment" associated with the three previous occasions on which defendant received conditional discharge for DUI.

¶ 31    In mitigation, defendant's wife testified that defendant supported the family financially because she was on disability after breaking her ribs in a work accident. She feared that she would be unable to complete household chores and cover the family's expenses if defendant was sent to prison.

¶ 32    Defense counsel emphasized that defendant's conduct did not cause any injuries or property damage. In addressing the State's points about the substance abuse section of the PSI report, counsel admitted that she was unaware whether defendant had ever received alcohol treatment but asserted that defendant would not have received such treatment in prison after 2003. In response, the court recalled the incident in which defendant "apologized for lying [and] admitted that he lied" about not understanding the Rule 402 conference because of his medication. Thus, the court opined that defendant "is not always known as being truthful."

¶ 33    In allocution, defendant stated that he "appreciate[d]" his time in alcohol treatment during the pendency of the present case and that he "need[ed] one more time and that's it."

¶ 34    In announcing defendant's sentence, the court stated that it reviewed the trial evidence, the arguments presented in mitigation and aggravation, and defendant's allocution. The court noted that defendant had numerous convictions for DUI and DWR over the past 24 years and that his driving abstract was also "littered" with other traffic violations such as leaving the scene of an accident and failing to carry insurance. Consequently, the court sentenced defendant to concurrent sentences of 22 years in prison for aggravated DUI and 6 years in prison for DWR. In order to leave "no question about why [it was] imposing this sentence," the court stated that it believed defendant posed a "very extreme danger" to public safety and that a lengthy prison sentence was the only way to prevent defendant from driving while intoxicated. Upon defendant's motion to reconsider the sentences, the court reduced the

aggravated DUI sentence to 16 years in prison.

¶ 35                                    ANALYSIS

¶ 36    On appeal, defendant first argues that the State's closing argument deprived him of a fair trial because the prosecutor mentioned facts not in evidence. In particular, defendant alleges that the prosecutor erred by explaining to the jury (1) how to convert his blood serum alcohol concentration into its whole blood equivalent and (2) how to convert that figure from milligrams per deciliter into grams per 100 milliliters.

¶ 37    Defendant acknowledges that he forfeited the argument by failing to include it in a posttrial motion but contends that we may nevertheless review the issue under the plain error doctrine or as a matter of ineffective assistance of counsel.

¶ 38    The plain error doctrine is a narrow and limited exception to the general forfeiture rule that allows a reviewing court to consider an unpreserved issue if the defendant can show that a clear or obvious error occurred and either (1) the evidence was " 'so closely balanced that the error alone threatened to tip the scales of justice against the defendant' " or (2) the error was so serious as to deny him a fair trial. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *People v. Piatkowksi*, 225 Ill. 2d 551, 565 (2007)). "Before invoking the plain error exception, however, we determine whether any error occurred." *People v. Chapman*, 194 Ill. 2d 186, 226 (2000).

¶ 39    Similarly, a defendant asserting ineffective assistance of counsel must show both that (1) his counsel's performance was objectively unreasonable and (2) there is a reasonable probability that the result of the proceeding would have been different but for counsel's unreasonable performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under either theory, a reviewing court must first determine whether the defendant can establish that a clear error occurred. *People v. Cox*, 2017 IL App (1st) 151536, ¶ 52.

¶ 40    The parties disagree about the proper standard under which we should determine whether an error occurred. Defendant notes that, after analyzing our supreme court's decisions in *People v. Blue*, 189 Ill. 2d 99, 128 (2000) (applying an abuse of discretion standard), and *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007) (reviewing *de novo* whether the prosecutor's intentional misconduct warranted a new trial), this court has held that (1) the propriety of remarks during closing argument is reviewed for abuse of discretion and (2) whether the improper remarks, if any, require a new trial is reviewed *de novo*. See *People v. Cook*, 2018 IL App (1st) 142134, ¶ 64. However, defendant argues that we should review the prosecutor's comments *de novo* because, as defendant did not object to the remarks, the trial court did not actively exercise its discretion to decide whether they were proper. The State, citing *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 48, argues that the proper standard is abuse of discretion. In this case, we would reach the same result under any standard of review.

¶ 41    Although the State is afforded "wide latitude" during closing arguments, it may not misstate the facts or argue facts not in evidence. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009). However, the State is entitled to comment on the evidence and any reasonable inferences drawn therefrom. *Id.* Moreover, the State is permitted to remark upon matters of common knowledge and experience during closing arguments. *People v. Runge*, 234 Ill. 2d 68, 146 (2009). An improper closing argument warrants a new trial only if it "engender[ed] substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them." *Wheeler*, 226 Ill. 2d at 123.

¶ 42    Turning to the present case, defendant first challenges the prosecutor's statements converting his blood serum alcohol concentration into its whole blood equivalent. Although defendant is correct that no testimony established how to perform this conversion, the formula for doing so was presented to the jury when the court took judicial notice of the fact that a person's whole BAC is calculated by dividing that person's blood serum alcohol concentration by 1.18. See 20 Ill. Adm. Code 1286.40 (2015). Defendant does not challenge the propriety of the court's decision to take judicial notice of the formula, but instead asserts that the State was required to "establish the converted number" either through expert testimony or through a stipulation between the parties. However, "[e]xpert testimony is proper when the subject matter of the inquiry is such that only a person with skill or experience in that area is capable of forming a judgment." *People v. Leahy*, 168 Ill. App. 3d 643, 649 (1988). Here, all that was required was to divide two given numbers. This is a matter of basic arithmetic and did not necessitate the use of expert testimony. See *People v. Becker*, 239 Ill. 2d 215, 235 (2010) (expert testimony not required "on matters of common knowledge unless the subject is difficult to understand and explain").

¶ 43    The cases cited by defendant do not support his position that expert testimony or a stipulation was required. See *People v. Hamerlinck*, 2018 IL App (1st) 152759, ¶¶ 48-49 (parties stipulated to the defendant's whole BAC by dividing his blood serum alcohol concentration by 1.18); *People v. Stipp*, 349 Ill. App. 3d 955, 956-57 (2004) (same); *People v. Thoman*, 329 Ill. App. 3d 1216, 1218-20 (2002) (reversing the defendant's conviction where the jury "was presented with no evidence of the conversion factor" between blood serum alcohol concentration and whole BAC). At best, these cases stand for the proposition that the State may establish a defendant's BAC through stipulation or expert testimony. However, nothing in those opinions suggests that the State is required to do so. Indeed, the *Thoman* court stated that "[t]he State could have proved the [defendant's] whole blood alcohol concentration through expert testimony regarding the conversion factor *or* through asking the trial court to take judicial notice of, and instruct the jury on, the appropriate conversion factor." (Emphasis added.) *Thoman*, 329 Ill. App. 3d at 1220. Here, the State did just that, establishing (1) defendant's blood serum alcohol concentration through Dr. Magas-Papadimitriou's testimony and (2) the whole-blood conversion formula through judicial notice. Given the two numbers, the arithmetic was rudimentary. Thus, the prosecutor did not err in converting defendant's blood serum alcohol concentration into its whole blood equivalent during closing argument.

¶ 44    Relatedly, defendant also contends that the prosecutor erred by telling the jury that defendant's blood serum alcohol concentration of 190 milligrams per deciliter was equivalent to 0.19 grams per 100 milliliters. Defendant concedes that, without the challenged comments, the jurors still would have divided 190 (his blood serum alcohol concentration expressed in milligrams per deciliter) by 1.18 (the judicially noticed conversion factor) to arrive at a whole BAC of roughly 161 milligrams per deciliter. However, defendant contends that the jurors would not have performed the additional step of converting that number into grams per 100 milliliters.

¶ 45    This argument is pure speculation, as the jury was properly instructed that a person's BAC referred to the number of grams of alcohol per 100 milliliters of that person's blood. Thus, the jurors would have known that they needed to convert the 161 milligrams per deciliter if they wanted to apply the presumption that a defendant is intoxicated when his BAC exceeds 0.08

grams per 100 milliliters. Although defendant doubts the jurors' ability to understand or perform such a conversion, we see no basis to conclude that they could not have done so. See *People v. Redman*, 135 Ill. App. 3d 534, 540-41 (1985) ("Given the intelligence of those selected for jury duty in this society, it would appear strange to call a statement such as made here by the prosecutor error, when the jury on its own, by a simple mathematical calculation, could arrive at the same conclusion."). The calculation is made all the easier by the fact that 1 deciliter is equivalent to 100 milliliters. We also note that, had the jury miscalculated as defendant speculates, it would still have determined that his BAC far exceeded the legal limit. Thus, under defendant's theory, the jury still could have chosen to apply the presumption that he was intoxicated.

¶ 46    Moreover, even assuming, *arguendo*, that an error occurred, we would still affirm defendant's convictions. As noted, the first prong of the plain error doctrine requires a defendant to establish that the evidence was so closely balanced that the error alone could have changed the outcome of the trial. *People v. Sebby*, 2017 IL 119445, ¶ 51. However, even putting the blood draw aside, the evidence of defendant's guilt was overwhelming. Palmese testified that he observed defendant commit a traffic violation and initiated a traffic stop. Defendant activated his right turn signal but pulled over to the left and parked in the area between directions of traffic. His speech was "slurred and delayed," he smelled of alcohol, and his eyes were "glassy." Defendant also admitted to drinking three beers and failed all three field sobriety tests that Palmese administered. Afterwards, Palmese and another officer had to assist defendant into the back of a squad car, and defendant "almost *** fell asleep" during the 10-minute drive to the police station. Palmese's testimony was corroborated by the video from his squad car. Thus, the evidence was not closely balanced, and review under the first prong of the plain error doctrine would not entitle defendant to relief.

¶ 47    Nor can defendant obtain relief under the second prong of the plain error doctrine. Under that prong, a defendant must show that the error was "so serious that it affected the fairness of [his] trial and challenged the integrity of the judicial process." *People v. Clark*, 2016 IL 118845, ¶ 44. Defendant concedes that the prosecutor's calculations, which showed that his BAC was twice the legal limit several hours after the traffic stop, were correct. As noted, the jurors could have easily reached this conclusion on their own notwithstanding the challenged remarks. Moreover, the jury was repeatedly instructed that (1) it should only consider the testimony, trial exhibits, and judicially noticed facts and (2) closing arguments were not evidence and should be disregarded to the extent not supported by the evidence. Similarly, the jury was properly instructed that they were not required to accept the judicially noticed conversion formula or apply any presumption based on defendant's BAC. Thus, we cannot say that the State's closing argument rendered defendant's trial fundamentally unfair. See *Glasper*, 234 Ill. 2d at 215 (improper comment during closing argument not second-prong plain error where the jury was instructed to base its verdict solely on the evidence).

¶ 48    Additionally, as the evidence of defendant's guilt was overwhelming, he cannot show a reasonable probability that he was prejudiced by his counsel's failure to object to the State's closing argument. His claim of ineffective assistance of counsel is therefore meritless. See *People v. Enoch*, 122 Ill. 2d 176, 202 (1988).

¶ 49    Next, defendant argues that the trial court erred by imposing an aggravated DUI sentence that was greatly disproportionate to the nature of the offense and "ignor[ed]" his rehabilitative potential. In particular, defendant argues that his sentence was excessive because (1) he did

not cause injury or property damage and (2) it did not account for mitigating factors such as his "non-violent background, strong work history, [and] strong family ties."

¶ 50 The Illinois Constitution requires that all sentences be imposed according to both the seriousness of the offense and the goal of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11; *People v. Rizzo*, 2016 IL 118599, ¶ 28. A trial court has broad discretionary powers in imposing a sentence, and its decision is entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Because the trial court is in the superior position to evaluate factors such as the defendant's credibility, habits, age, demeanor, and general moral character, a reviewing court will not substitute its own judgment merely because it would have weighed the factors differently. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Moreover, a sentence within the statutory guidelines is presumed proper (*People v. Knox*, 2014 IL App (1st) 120349, ¶ 46) and will not be reduced unless the trial court abused its discretion (*Alexander*, 239 Ill. 2d at 212).

¶ 51 As committed here, aggravated DUI is a Class X felony punishable by a mandatory term of 6 to 30 years in prison. 625 ILCS 5/11-501(d)(2)(E) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). Thus, defendant's 16-year sentence is presumed proper and will not be overturned unless he affirmatively shows that it is greatly disproportionate to his offense. See *People v. Burton*, 2015 IL App (1st) 131600, ¶ 36. However, all of the factors cited by defendant on appeal were presented to the trial court and are presumed to have been considered appropriately. Although defendant asserts that the trial court "ignored" his potential for rehabilitation, he also correctly notes that the court "believed that [he] had no chance of rehabilitation" based on his numerous prior offenses. Thus, defendant's argument is actually that the court did not weigh his potential for rehabilitation heavily enough. We decline to substitute our own judgment on the weight of such factors for that of the trial court. *Stacey*, 193 Ill. 2d at 209. The trial court was not required to assign more weight to defendant's rehabilitative potential than to the seriousness of the offense, which is the most important sentencing factor. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11.

¶ 52 We also disagree with defendant's contention that the trial court "retaliated" against him by imposing a lengthy sentence because it mistakenly believed that he lied about his medication after the Rule 402 conference. As noted, the State suggested in aggravation that defendant made false statements in the PSI report by (1) denying he had a drinking problem, (2) denying ever being evaluated or treated for alcohol abuse, and (3) claiming that he had only three DUI arrests. When defense counsel admitted that she was unaware whether defendant had previously been treated for alcohol use, the court opined that defendant was "not always known as being truthful" because he lied to the court about not understanding the Rule 402 conference due to not receiving his depression medication that morning.

¶ 53 Initially, defendant maintains that he was not untruthful to the court and that the exchange was simply a misunderstanding due to his difficulty speaking English. However, it was the trial court's role to determine defendant's credibility for sentencing purposes. *People v. Colon*, 2018 IL App (1st) 160120, ¶ 66. We cannot say that the trial court abused its discretion by discrediting defendant's self-serving explanation of his statements. Although defendant told the court that he took a sleeping pill at night and Zoloft in the morning, the medical records obtained by the court showed that defendant took a different antidepressant at night and only acetaminophen in the morning. The records did not mention that defendant took a sleeping pill. Additionally, while defendant claims that a language barrier was the source of the confusion,

the trial court noted for the record that defendant addressed the court in "perfect" English despite having a Spanish interpreter available in the courtroom during the proceeding. Palmese also testified at trial that defendant was able to communicate in English. Thus, it is far from clear that defendant was not dishonest with the court.

¶ 54     Regardless, defendant still bears the burden of affirmatively establishing that the court relied upon improper considerations. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). In determining the rationale behind the trial court's sentencing decision, we must interpret the record as a whole rather than focus on isolated comments. *Id.* Although the court made a single reference to the Rule 402 conference at sentencing, the record clearly shows that the court did not base its sentence on the medication issue. Instead, the record demonstrates that the court placed significant weight on defendant's lengthy history of driving while intoxicated and on a revoked license. Indeed, in order to leave "no question" about why it imposed the sentence, the court specifically stated that it believed a substantial period of incarceration was the only way to quell the "very extreme danger" that defendant's repeated offenses posed to the public. Thus, we cannot conclude that the court relied on improper aggravating factors in fashioning defendant's sentence.

¶ 55     In short, defendant has not overcome the presumption that his aggravated DUI sentence was proper. Accordingly, he has not proven that the trial court abused its discretion in imposing the sentence, which was well below the statutory maximum.

¶ 56     Defendant next argues, and the State concedes, that the trial court improperly imposed an extended-term sentence for DWR. The parties acknowledge that defendant failed to preserve the issue but contend that we may review it as a matter of plain error. We agree and will therefore consider defendant's argument on its merits. See *People v. Palen*, 2016 IL App (4th) 140228, ¶¶ 74-78 (misapplication of an extended-term sentence may be reviewed under the second prong of the plain error doctrine).

¶ 57     Here, because of defendant's criminal history, his DWR conviction was a Class 4 felony. 625 ILCS 5/6-303(d-3) (West 2016). A Class 4 felony generally carries a sentence of one to three years' imprisonment, with a possible extended term of three to six years. 730 ILCS 5/5-4.5-45(a) (West 2016). Thus, defendant's six-year sentence fell within the extended term range. However, when, as here, multiple convictions stem from related courses of conduct, a defendant may only be sentenced to an extended-term sentence for the most serious classification of offense. *Id.* § 5-8-2(a); *People v. Reese*, 2017 IL 120011, ¶ 83. Defendant's aggravated DUI conviction was a Class X felony, a more serious offense than Class 4 DWR. Thus, an extended-term sentence for DWR was improper.

¶ 58     Although the parties agree that the extended-term DWR sentence was erroneously imposed, they disagree about the proper remedy. The State argues that this court should reduce the DWR sentence to the maximum nonextended term of three years in prison and leave the aggravated DUI sentence undisturbed. Defendant argues that the cause should be remanded for resentencing on both offenses because the error might have influenced the court's sentence for aggravated DUI. Alternatively, defendant requests that his DWR sentence be reduced to the nonextended maximum of three years.

¶ 59     We find it unnecessary to remand for resentencing, as it is clear that the DWR sentence did not affect the aggravated DUI sentence. Indeed, the trial court explained that it fashioned the aggravated DUI sentence in light of its belief that a lengthy prison term was necessary to prevent defendant from creating a "very extreme danger" by driving while intoxicated.

Similarly, the imposition of the maximum six-year, extended-term sentence for DWR leaves us with no doubt that the trial court intended to impose the highest possible sentence on that count. Pursuant to our authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967), we therefore reduce defendant's DWR sentence to the maximum nonextended term of three years in prison. See *Reese*, 2017 IL 120011, ¶ 85 (reducing erroneously imposed extended-term sentences to the nonextended maximums where the record showed that the trial court intended to impose the maximum sentence available on those counts).

¶ 60    Finally, the parties also agree that this court should remand to the circuit court so that defendant may file a motion challenging the imposition of certain fines and fees and the application of his *per diem* credit. On February 26, 2019, while this appeal was pending, our supreme court adopted new Illinois Supreme Court Rule 558, which sets forth the procedure in traffic cases for correcting sentencing errors in, among other things, "the imposition or calculation or fines [and] fees" and "the application of *per diem* credit against fines." Ill. S. Ct. R. 558(a)(1), (2) (eff. Mar. 1, 2019). Rule 558 was then amended on May 17, 2019, to provide that "[i]n all traffic *** cases pending on appeal as of March 1, 2019, *** in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 558(e) (eff. May 17, 2019). "No appeal may be taken" based on an error covered by the rule unless the alleged error "has first been raised in the circuit court." Ill. S. Ct. R. 558(c) (eff. May 17, 2019). We therefore remand to the circuit court so that defendant may file a motion pursuant to this rule.

¶ 61                                                    CONCLUSION
¶ 62    For the stated reasons, we affirm defendant's conviction and sentence for aggravated DUI but reduce his sentence for DWR to three years in prison. The matter is remanded to allow defendant an opportunity to challenge his fines and fees and *per diem* credit in the circuit court.

¶ 63    Affirmed in part, modified in part, and remanded.