2020 IL App (1st) 162394-U

No. 1-16-2394

Order filed March 31, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 1628 |
| | ) | |
| LAVELL BLANCHARD, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justice Reyes concurred in the judgment.
Presiding Justice Gordon specially concurred.

**ORDER**

¶ 1    *Held*: We reverse defendant's sentence and remand for a new sentencing hearing because the circuit court failed to consider defendant's youth and its attendant characteristics before sentencing him to a *de facto* life sentence for offenses he committed as a juvenile.

¶ 2    At 17 years old, defendant Lavell Blanchard shot and killed a man during a botched robbery attempt. After finding defendant guilty of first degree murder and attempted armed robbery, the trial court sentenced him to 50 years in prison. On appeal, defendant argues that he is entitled to a

new sentencing hearing because the trial court failed to consider his youth and its attendant characteristics before imposing a *de facto* life sentence. The State concedes that defendant is entitled to a new sentencing hearing, but on different grounds. In the State's view, the trial court mistakenly believed that defendant was subject to a mandatory minimum sentencing enhancement that was in fact discretionary. For the following reasons, we reverse defendant's sentence and remand for a new sentencing hearing.[1]

¶ 3                                    I. BACKGROUND

¶ 4     The evidence at trial established that defendant and Britany Watson devised a plan to rob Sherman Horton. Watson lured Horton into his car with the promise of sex and alerted defendant to their location via text message. Defendant approached the driver's side of Horton's car with a gun and told him not to move. When Horton started to drive away, defendant fired two shots at the vehicle, striking and killing Horton. Following a bench trial, the trial court found defendant guilty of first degree murder and attempted armed robbery. Defendant does not challenge his convictions on appeal.

¶ 5     Before sentencing, the probation department prepared a pre-sentence investigation report (PSI). The PSI noted that defendant was raised by a single mother and did not know his father. Although his mother was unemployed, he reported a "normal childhood" without deprivation and denied being abused or neglected. He dropped out of high school but earned a G.E.D. while incarcerated. He had prior juvenile adjudications for burglary, aggravated battery, unlawful possession of a firearm, and possession of cannabis. While there is no indication that defendant

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

was examined by a mental health professional, the PSI states that his "criminal background indicates an anti-social personality."

¶ 6    Defendant moved to bar application of 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2016), which provides that "if, during the commission of [a first degree murder], the [defendant] personally discharged a firearm that proximately caused *** death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." Defendant argued that applying that sentence enhancement to him would violate the Eighth Amendment because it would result in a *de facto* life sentence for an offense he committed as a juvenile. The trial court denied the motion, concluding that it lacked authority to reject the enhancement.

¶ 7    The State asked the court to impose an "extensive [prison] sentence," citing defendant's history of juvenile adjudications, the fact that he inflicted serious harm in exchange for expected compensation, and the need for deterrence. Defense counsel asked the court to impose "something closer to the minimum." Citing *Miller v. Alabama*, 567 U.S. 460 (2012), counsel argued that "the distinctive attributes of youth," including "immaturity, recklessness, and impetuosity," make juveniles less culpable than adults and thus "diminish the penological justifications for imposing the harshest sentences on [them], even when they commit terrible crimes." To impose a sentence on a juvenile that is "tantamount" to life imprisonment, counsel continued, would "forswear[ ] altogether the rehabilitative ideal" and constitute a judgment of "incorrigibility" that "is inconsistent with youth." Counsel argued that defendant's youth, lack of education, and "reduced mental capacity" made him susceptible to Watson's peer pressure and prevented him from contemplating the harm his actions would cause. Moreover, counsel argued, defendant's "character and attitude" made him "unlikely to commit another crime."

¶ 8      The trial court recounted the facts of the crime and indicated that it had reviewed the PSI. The court observed that, "even at a young age, [defendant] was living a criminal life." The court also noted the probation department's assessment that defendant has an anti-social personality. The court explained that its "discretion [was] limited" because the General Assembly had "ma[d]e this a 100 percent case with gun enhancements," requiring "very, very severe sentences [for] people in these circumstances." The court sentenced defendant to 50 years in prison on the murder conviction and merged the attempted armed robbery conviction. At that point, the State informed the court that it was required to impose a separate, consecutive sentence on the attempted armed robbery conviction. Discussing the sentencing range for the first time, the prosecutor told the court that defendant was subject to a mandatory minimum sentence of 45 years on the murder conviction (20 years for the base offense plus the 25-year firearm enhancement) and a consecutive mandatory minimum sentence of four years on the armed robbery conviction. The court therefore adjusted defendant's sentence to 46 years on the murder conviction and four years on the attempted armed robbery conviction, to be served consecutively.

¶ 9      Defendant moved to reconsider the sentence, arguing that it was excessive in light of his background and asking the court not to apply the firearm enhancement. In denying the motion, the court stated that it had "consider[ed] mitigating factors" and noted that its sentence was "closer to the minimum than the maximum." Defendant filed a timely notice of appeal.

¶ 10                                    II. ANALYSIS

¶ 11     Defendant contends that his sentence violates the Eighth Amendment because it is a *de facto* life sentence that was imposed without consideration of his youth and its attendant characteristics. He also argues that the trial court's failure to consider various age-related factors violated 730 ILCS 5/5-4.5-105(a) (West 2016). The State concedes that defendant's sentence is a

*de facto* life sentence and does not dispute that the trial court failed to adequately consider defendant's youth and its attendant characteristics. But the State asserts that we need not address defendant's contentions because he is entitled to relief on other grounds. Namely, the State contends that the trial court violated 730 ILCS 5/5-4.5-105(b) (West 2016) by failing to exercise discretion in determining whether to apply the firearm enhancement, resulting in the court's imposition of a mandatory *de facto* life sentence in violation of the Eighth Amendment.

¶ 12    The Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller v. Alabama*, 567 U.S. 460, 479 (2012). Before imposing a life sentence on a juvenile offender, a trial court must consider (1) the defendant's age and related attributes, such as immaturity, impetuosity, and recklessness; (2) the defendant's family and home environment; (3) the extent of the defendant's participation in the offense and the influence of pressure from family and peers; (4) the defendant's inability to deal with police and prosecutors or assist his own attorneys due to age-related incompetencies; and (5) the defendant's prospects for rehabilitation. *Id.* at 477-78. A trial court may sentence a juvenile offender to life in prison only if, after considering these factors, it determines that the juvenile's offense "reflects irreparable corruption" rather than "transient immaturity." (Internal quotation marks omitted.) *Id.* at 479-80; see *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016); *People v. Holman*, 2017 IL 120655, ¶ 46. The Illinois Supreme Court has held that these rules extend to the imposition of *de facto* life sentences on juvenile offenders, which it defines as sentences exceeding 40 years in prison. See *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41; *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10.

¶ 13    Following *Miller*, the General Assembly enacted a juvenile sentencing statute that mandates consideration of the factors identified in that decision when a defendant is sentenced for

an offense committed as a juvenile. Among other things, the statute requires a sentencing court to consider the defendant's "age, impetuosity, and level of maturity at the time of the offense, including [his] ability to consider risks and consequences of behavior"; his "potential for rehabilitation"; and whether he "was subjected to outside pressure, including peer pressure, familial pressure, or negative influences." 730 ILCS 5/5-4.5-105(a) (West 2016). The statute also provides that when sentencing a defendant for an offense committed as a juvenile, the trial court "may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession, possession with personal discharge, or possession with personal discharge that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person." 730 ILCS 5/5-4.5-105(b) (West 2016).

¶ 14   We agree with defendant's contention that the trial court did not adequately consider his youth and its attendant characteristics when sentencing him. Although the court noted defendant's age and indicated that it had reviewed the PSI, a trial court's "mere awareness of a defendant's age and consideration of a PSI does not provide evidence that the [trial] court specifically considered [the] defendant's youth and its attendant characteristics." *People v. Harvey*, 2019 IL App (1st) 153581, ¶ 13. To the extent that the court considered defendant's youth, it appeared to assign it aggravating rather than mitigating weight when it stressed that "even at a young age, [defendant] was living a criminal life." Notably, the court did not consider whether defendant's culpability was diminished by the immaturity, impetuosity, or recklessness associated with youth. *Miller*, 567 U.S. at 472. Nor did the court consider the extent to which defendant's conduct was influenced by peer pressure from Watson or others. *Id*. at 477. Most importantly, the trial court failed to consider defendant's prospects for rehabilitation and made no assessment of whether he was "the rare juvenile offender whose crime reflects irreparable corruption" rather than "transient immaturity."

(Internal quotation marks omitted.) *Id.* at 479-80. By failing to consider these factors before imposing a *de facto* life sentence, the trial court violated both the Eighth Amendment and the juvenile sentencing statute. We thus reverse defendant's sentence and remand for a new sentencing hearing.

¶ 15    Although we need not address the State's alternative basis for reversal, we remind the trial court that, on remand, it "may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon" defendant's discharge of a firearm during the commission of the offense. 730 ILCS 5/5-4.5-105(b) (West 2016).

¶ 16                                III. CONCLUSION

¶ 17    For the foregoing reasons, we reverse defendant's sentence and remand for a new sentencing hearing.

¶ 18    Reversed and remanded.

¶ 19    PRESIDING JUSTICE GORDON, specially concurring.

¶ 20    I agree that this matter must be remanded for resentencing, but for different reasons than the majority cites. The majority states that the State "does not dispute that the trial court failed to adequately consider defendant's youth." *Supra* ¶ 11.  It would be more accurate to say that the State did not address this issue and that it conceded, instead, that remand was required for a different reason.  I find the State's argument persuasive, for the reasons explained below; and, thus, I respectfully decline to join the majority opinion and find that I must write separately.

¶ 21    In *People v. Buffer*, 2019 IL 122327, ¶ 40, the defendant committed an offense as a juvenile "that subjected him to a legislatively mandated minimum sentence of 45 years and for which he received a sentence of 50 years."  Similarly, in the case at bar, defendant committed an offense as

a juvenile that, the State informed the court, subjected him to a legislatively mandated minimum sentence of 49 years and for which he received a sentence of 50 years.

¶ 22    As the State concedes, the record establishes that the State misinformed the trial court that defendant was subject to a legislatively mandated minimum sentence of 49 years, which included a 20-year minimum sentence for first degree murder, plus a 25-year firearm enhancement and a consecutive minimum four-year sentence for attempt armed robbery. Thus, when the experienced trial judge in this case sentenced defendant to 50 years, he thought he was showing compassion and sentencing defendant close to the bare minimum. In its brief to this court, the State concedes that "the judge's comments made clear that he arrived at the 50-year sentence with an eye toward imposing punishment closer to what he erroneously believed to be the minimum."

¶ 23    However, in our case, as in *Buffer*, the total sentence was skewed drastically upward by what the trial court was led to believe was a nondiscretionary firearm enhancement of 25 years. See *Buffer*, 2019 IL 122327, ¶ 5. In *Buffer*, as in our case, the trial court still exercised some discretion in that it did not choose to impose the minimum. *Buffer*, 2019 IL 122327, ¶ 5. Still, our supreme court vacated the sentence and remanded for a new sentencing hearing. *Buffer*, 2019 IL 122327, ¶ 47.

¶ 24    The supreme court explained that it was drawing a " 'clear, predictable and uniform' " line, which would be easy for its trial and appellate courts to apply. *Buffer*, 2019 IL 122327, ¶ 29 (quoting *Roper v. Simmons*, 543 U.S. 551, 594 (2005) (O'Connor, J., dissenting)). The line it chose to draw was at 40 years: "In determining when a juvenile defendant's prison term is long enough to be considered *de facto* life, we choose to draw a line at 40 years." *Buffer*, 2019 IL 122327, ¶ 40. In the case at bar, where the sentence was affected by what was believed to be a

mandatory firearm enhancement, resulting in a mandatory minimum sentence of over 40 years for a juvenile offender, I believe *Buffer* requires vacating the sentence and remanding for a new sentencing hearing at which the enhancement is clearly understood to be discretionary. 730 ILCS 5/5-4.5-105(b) (West 2016) ( "the court *** may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession"); *Buffer*, 2019 IL 122327, ¶ 24 (the recent "substantive rule of constitutional law" requiring leniency towards juveniles "applies retroactively to cases" pending on review).

¶ 25    For the foregoing reasons, I specially concur.