2022 IL App (1st) 210911-U

No. 1-21-0911

Order filed August 18, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 1628 |
| | ) | |
| LAVELL BLANCHARD, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in resentencing defendant to 28 years' imprisonment for first-degree murder.

¶ 2    Following a bench trial, defendant Lavell Blanchard was found guilty of first-degree murder while armed with a firearm and attempted armed robbery. Defendant was 17 years old when he committed the offenses. The trial court sentenced defendant to a total term of 50 years in prison, which included a 25-year firearm sentencing enhancement for personally discharging a

firearm during the commission of the offense. Defendant appealed his sentence. This court reversed his sentence and remanded for a new sentencing hearing. *People v. Blanchard*, 2020 IL App (1st) 162394-U. We held that the trial court failed to adequately consider defendant's youth and its attendant characteristics before imposing a *de facto* life sentence and reminded the court it may, in its discretion, decline to impose the 25-year firearm sentencing enhancement. *Id.* ¶¶ 14, 15.

¶ 3 On remand, the trial court imposed a sentence of 28 years in prison for first-degree murder and 4 years for attempted armed robbery, to be served consecutively. Defendant now appeals, contending his 28-year sentence for first-degree murder is excessive because it is disproportionate to his rehabilitative potential, and the relevant mitigating and aggravating factors did not warrant such a severe sentence. We affirm.[1]

¶ 4 As reflected in our prior order addressing defendant's direct appeal of his initial sentence, the trial evidence established that 17-year-old defendant and Britany Watson planned to rob Sherman Horton. Horton was lured into his vehicle by Watson, who then notified defendant of their location via text message. Defendant, while armed with a gun, approached Horton on the driver's side of the vehicle and told him not to move. Defendant fired a shot into the vehicle as Horton started to drive away and then a second shot, striking and killing Horton.

¶ 5 The trial court found defendant guilty of first-degree murder and attempted armed robbery. The trial court sentenced defendant to 46 years in prison for first-degree murder, including a 25-year firearm sentencing enhancement under the erroneous impression that the sentencing

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

enhancement was mandatory, and 4 years in prison for attempted armed robbery, to be served consecutively. Defendant appealed his sentence, and this court reversed his sentence and remanded for a new sentencing hearing, finding that the trial court failed to adequately consider defendant's youth and its attendant characteristics before imposing a *de facto* life sentence. *Id.* ¶ 14. We reminded the trial court that, on remand, it may exercise its discretion and decline to impose the firearm sentencing enhancement. *Id.*

¶ 6    On remand, a new presentence investigative (PSI) report was presented at the resentencing hearing. Defendant was 26 years old at the time of resentencing. The PSI reflected that defendant had been adjudicated delinquent for unlawful use of a weapon (2011), electronic monitoring violation (2010), burglary (2010), criminal trespass to vehicles (2009), possession of cannabis (2008), and aggravated battery of a school employee (2008).

¶ 7    The PSI stated that defendant was adopted at the age of three, never had a relationship with his biological mother, and had no information about his biological father. He expressed a close familial relationship with his adoptive mother and spoke to her on the phone weekly. Defendant stated he was "very close" to his older siblings from his adoptive mother and had regular phone contact with his four biological brothers, who were also adopted by his adoptive mother. He received "very strong support" from his family, who provided financial and emotional support. Defendant reported he had a good childhood, stable home, and his basic needs were met. Defendant indicated he " 'felt alone and suffered with anger,' " revealing he did not really understand why his biological parents were not involved in his life.

¶ 8    The PSI noted that defendant was expelled from grammar school for committing a battery against a teacher but graduated high school while in the Juvenile Department of Corrections.

Defendant had future plans to pursue a bachelor's degree in business and a real estate license. He also worked as a janitor for two years in prison.

¶ 9 According to the PSI, defendant admitted prior gang involvement from about the age of 12 until the age of 19 and was influenced by the other gang members in the neighborhood. Defendant denied any diagnosis of a learning or behavior disorder and had never been on psychotropic medication. He reported no alcohol or illegal drug use, though he attended a substance abuse treatment program as part of his juvenile sentence for " ' selling weed.' "

¶ 10 At age 17, when defendant committed the instant offenses, he did not understand risks and consequences and was very "misled by the streets." He described his maturity level at that time as "very low." He took "no pride in any criminal behavior" and hoped "the victims" could forgive him. Although defendant participated in his defense, "he did not understand everything." He had been very involved in his defense more recently, "because he has matured and understands so much more."

¶ 11 At the resentencing hearing, the State published Horton's mother's updated victim-impact statement in aggravation, which the State read in court. In her statement, Horton's mother stated he was her only child, and they "stuck together like glue." She described Horton as "a good person who loved and cared for his family." Horton left behind five children and two grandchildren, whom he never had a chance to meet. She never wanted to be in the courtroom under these circumstances and had hoped "this chapter of [her] life was closed five years ago but once the system has failed [her] and many others yet again." She "[did] not agree with some of the new laws that the Illinois legislature makes" and "fear[ed] for [her] life because they keep letting this criminal out of jail early and into our communities."

¶ 12    In arguing aggravation, the State recounted defendant's juvenile background, noting he was previously adjudicated delinquent for aggravated battery against a schoolteacher, burglary for breaking into a daycare and stealing the keys to one of the daycare's vehicles, unlawful use of a weapon, resisting arrest, criminal trespass to a vehicle, and possession of cannabis. The State also recounted that defendant violated his prior probation sentence on more than one occasion and also violated his electronic monitoring. The State argued that defendant was a danger to the community and caused serious bodily harm in the instant case when he "pulled the trigger at virtually point-blank range" and killed Horton. The State further argued that there was no evidence demonstrating defendant's capability for rehabilitation. The State noted defendant was a "few weeks shy of his 18th birthday" when he committed the offenses and asked the court to impose the original sentence of 50 years in prison.

¶ 13    In mitigation, defense counsel argued that a 50-year sentence would be inappropriate under *People v. Buffer*, 2019 IL 122327, ¶ 42, where our supreme court set a bright line rule that a *de facto* life sentence for a juvenile is any sentence greater than 40 years. Defense counsel emphasized that defendant's age of 17 years old when he committed the offenses was a mitigating, not an aggravating, factor. Defense counsel argued defendant's juvenile criminal background resulted from his immaturity, impetuousness, and failure to appreciate the risks and consequences of his actions.

¶ 14    Defense counsel explained that defendant was subjected to peer pressure and negative influences, including previous gang involvement, which led him down the wrong path. Counsel argued that, because of his age, defendant was not able to fully understand the court proceedings and help his attorney in his defense. Defense counsel further argued that defendant's potential for

rehabilitation was strong, given there were no further criminal cases against him since his incarceration, and he received his high school diploma while in juvenile detention.

¶ 15    Defense counsel additionally argued the original sentence imposed for first-degree murder was one year more than the minimum, which was before "all of these extra mitigating factors that the legislature put into place" that should be considered when sentencing a juvenile under section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2020)). Counsel then addressed the section 5-4.5-105(a) factors in turn, arguing the evidence supporting each factor. He requested the minimum sentence of 20 years for first-degree murder, without imposing the discretionary firearm sentencing enhancement, and the minimum 4 years for attempted armed robbery, to be served concurrently. Defendant declined to speak in allocution.

¶ 16    In resentencing defendant, the court noted that juveniles are to be treated differently than adults, and defendant was a "very young man" when he committed the offenses. The court stated that Watson "was more likely than not more of a moving party and influencer in setting the stage for a crime to be committed" and "recruited [defendant] to be her partner in crime." The court recounted defendant's participation in the crime, stating it was intended and planned. Watson lured Horton to a "secluded spot in the car" and texted back and forth with defendant when he was to appear. Defendant did appear, "following his part in the scheme." Defendant, the only armed individual on the scene, shot Horton and then shot again as Horton attempted to drive away.

¶ 17    The court recognized it was "looking at this case anew" and had to review "who [defendant] was going into this case." The court agreed with defense counsel that defendant's family circumstances were challenging. His biological parents were not there for him, and his adoptive mother did the best she could with limited resources. The court recounted defendant's

juvenile delinquency adjudications and violation of probation and electronic monitoring, stating "[i]t was just a litany of trouble after trouble after trouble," "[a]nd then he met Ms. Watson and here we are today."

¶ 18    The court expressed it "never enjoyed" "all these mandatory sentences where discretion isn't allowed," "was grateful for the chance to exercise some discretion, and [would] do so now." The court stated it was "trying to take into account all of the factors" and was "mindful that [defendant was] looking at still serving more than 20 years of actual time in prison from today's date." It had heard no evidence that defendant had violations or tickets while in the penitentiary, only that he worked as a janitor. The court "look[ed] at [defendant's] age and consider[ed] the fact that the murder sentence will still be served at 100 percent." The court resentenced defendant to 28 years in prison for first-degree murder and a consecutive sentence of 4 years in prison for attempted armed robbery, for a total sentence of 32 years in prison.

¶ 19    Defendant filed a posttrial motion to reconsider the sentence, arguing the sentence was excessive, constituted cruel and unusual punishment, and his sentence for first-degree murder should have been limited to 21 years, which was the original sentence imposed, exclusive of the firearm sentencing enhancement. The trial court denied the motion, and defendant timely appealed.

¶ 20    On appeal, defendant contends his 28-year sentence for first-degree murder, 8 years above the minimum, is excessive.[2] He argues the sentence is disproportionate to his rehabilitative potential, considering his juvenile age when he committed the offense, and the evidence in aggravation and mitigation did not justify a sentence of that severity.

_____

[2] Defendant does not raise any contentions on appeal regarding his individual sentence for attempted armed robbery, which was imposed at the minimum four years in prison.

¶ 21    The Illinois Constitution provides that a trial court shall impose a sentence reflecting both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court is afforded broad discretion when sentencing a defendant, and great deference is given to the imposed sentence. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000); *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 50. The trial court is in the superior position to evaluate factors such as the defendant's credibility, habits, age, demeanor, and general moral character. *Cruz*, 2019 IL App (1st) 170886, ¶ 50. Therefore, a reviewing court will not substitute its own judgment merely because it would have weighed the factors differently. *Id.*

¶ 22    Where a defendant challenges a sentence within the statutory limitations for the offense, the reviewing court will not disturb the sentence absent an abuse of discretion. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 32. In the sentencing context, we will find an abuse of discretion where the imposed sentence "varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50.

¶ 23    Here, the trial court found defendant guilty of first-degree murder, subjecting him to a term of not less than 20 years and no more than 60 years in prison. 730 ILCS 5/5-4.5-20(a) (West 2020). On resentencing, the court imposed a 28-year sentence, which was toward the lower end of the sentencing range for first-degree murder. The court recognized the firearm sentencing enhancement was not mandatory for juvenile offenders and exercised its discretion by declining to impose it. 730 ILCS 5/5-4.5-105(b) (West 2020); *People v. Hunter*, 2017 IL 121306, ¶ 54. Defendant was also found guilty of attempted armed robbery, which carried a sentencing range from 4 years to 15 years in prison. 720 ILCS 5/8-4(c)(2) (West 2020). The court imposed the 4-year minimum sentence, to be served consecutively. Defendant's sentences fell within the statutory

sentencing range and are, therefore, presumed proper unless defendant affirmatively shows otherwise. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 24    To make this showing, defendant argues his rehabilitative potential and other mitigating factors did not support the 28-year sentence for first-degree murder, which was above the statutory minimum by 8 years and greater than the originally imposed sentence of 21 years. Defendant cites *inter alia* the "mitigating facts" of the offense and defendant's young age and juvenile background. He acknowledges that both the court and the PSI noted many of the section 5-4.5-105(a) factors to be considered in sentencing a juvenile, but contends the court failed to balance the retributive and rehabilitative purpose of its punishment. Defendant argues the sentence imposed demonstrates the court did not craft a sentence with the objective of restoring him to useful citizenship as required by the Illinois Constitution.

¶ 25    In fashioning a sentence, the trial court must consider all relevant factors in mitigation and aggravation (*People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27), along with the particular circumstances of each case (*People v. Fern*, 189 Ill. 2d 48, 53 (1999)). Section 5-4.5-105(a) provides that, when sentencing a juvenile, the court must also consider the following factors in mitigation:

> "(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;
> (2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2020).

¶ 26    After reviewing the record, we conclude defendant has failed to demonstrate that the trial court improperly balanced his rehabilitative potential and all relevant mitigating and aggravating juvenile sentencing factors in fashioning the 28-year sentence for first-degree murder.

¶ 27    As an initial matter, although the court must consider all relevant factors and any evidence presented in mitigation, the court need not recite and assign a value to each factor. *People v.*

*Williams*, 2019 IL App (1st) 173131, ¶ 21. Further, the new PSI set forth the mitigating evidence defendant raises here, and defense counsel extensively argued that evidence, including the section 5-4.5-105(a) factors, at the resentencing hearing. The law is well-established that "[w]here mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. In fact, the record shows that the trial court considered that mitigating evidence and the section 5-4.5-105(a) factors, balancing this evidence against the evidence in aggravation. The court specifically considered defendant's age at the time of the offense, stating defendant was "a very young man" when he committed the offenses. It found Watson "recruited [defendant] to be her partner in crime" and was the "moving party" in the scheme, reflecting the court's consideration of outside influence and peer pressure. The court discussed defendant's challenging family circumstances resulting from being given up for adoption and acknowledged that he had the love and support of his adoptive family. The court further noted there was no evidence defendant received any disciplinary violations, tickets, or additional cases since his incarceration, reflecting his efforts at rehabilitation.

¶ 28 In aggravation, the court recounted defendant's juvenile delinquency background, the planned nature of the robbery, and how defendant, who was the only armed individual, shot Horton twice as Horton tried to flee. The court expressly stated it was "trying to take into account all of the factors here" and was mindful that defendant was "looking at still serving more than 20 years of actual time in prison from today's date."

¶ 29 A minimum sentence is not warranted simply because mitigating evidence exists. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). Likewise, defendant's rehabilitative potential is not

entitled to more weight than the seriousness of the offense, which is the most important factor. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. Here, defendant is essentially asking this court to reweigh the sentencing factors presented to the trial court and substitute our judgment for that of the trial court, which we cannot do. *Stacey*, 193 Ill. 2d at 209 (2000). This court will not reverse the sentencing court just because the relevant factors in mitigation and aggravation could have been weighed differently. *McWilliams*, 2015 IL App (1st) 130913, ¶ 28; *People v. Burton*, 2015 IL App (1st) 131600, ¶¶ 36, 38 (defendant failed to make any affirmative showing that the trial court did not consider the relevant mitigation factors).

¶ 30     On this record, where defendant had an extensive delinquent background, he and Watson set up Horton for an armed robbery, and defendant then shot Horton as he tried to drive away, we do not find the 28-year sentence for first-degree murder at variance with the spirit and purpose of the law or manifestly disproportionate to the seriousness of the offense. See *Stacey*, 193 Ill. 2d at 210; *Burton*, 2015 IL App (1st) 131600, ¶ 36. Accordingly, defendant's 28-year sentence for first-degree murder and consecutive 4-year sentence for attempted armed robbery are affirmed.

¶ 31     The judgment of the circuit court of Cook County is affirmed.

¶ 32     Affirmed.